## A96A1004. JOHNSON v. TRUST COMPANY BANK.
### (478 SE2d 629)

POPE, Presiding Judge.

On July 18, 1993, plaintiff James Johnson was shot at an ATM owned by defendant Trust Company Bank. Four months later, he filed for Chapter 7 bankruptcy, but in doing so failed to list any claim

he might have against defendant as a potential asset of his bankruptcy estate. Subsequently, the bankruptcy court discharged plaintiff's debts and closed his case. Thereafter, plaintiff filed the present tort action against defendant. Defendant moved for summary judgment on the ground that plaintiff's action was barred by the doctrine of judicial estoppel because plaintiff had failed to schedule his potential tort claim against defendant with the bankruptcy court. The trial court agreed and granted defendant's motion. Concluding that the trial court erred, we reverse.

"[T]he essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary." (Citation and punctuation omitted.) *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455 (442 SE2d 265) (1994). "The doctrine . . . is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings [and] is designed to prevent parties from making a mockery of justice [through] inconsistent pleadings." (Citations and punctuation omitted.) *Original Appalachian Artworks v. S. Diamond Assoc.*, 44 F3d 925, 929-930 (11th Cir. 1995); see *McKinnon v. Blue Cross &c. of Alabama*, 935 F2d 1187, 1192 [8] (11th Cir. 1991).

In the instant case, although it is undisputed that plaintiff made the initial mistake of failing to schedule any tort claim he might have against defendant as a potential asset, there is unrefuted evidence in the record that plaintiff had given information concerning any such claim to his attorney and the bankruptcy trustee. Plaintiff also specifically referred to the potential claim in the Statement of Financial Affairs he filed with the bankruptcy court. And, unlike the plaintiffs in those cases cited by the dissent in support of its determination that the doctrine of judicial estoppel is applicable, when plaintiff in the instant case became aware that his potential claim against Trust Company had not been scheduled, he sought and was granted permission from the bankruptcy court to reopen his bankruptcy case and amend his schedules to include the claim. Under such circumstances, it cannot be said as a matter of law that plaintiff intentionally attempted to manipulate and deceive the court system, or that he was attempting to make a mockery of the system through inconsistent pleading.

Furthermore, because plaintiff successfully has amended his bankruptcy petition to include any claim against defendant as a potential asset, he clearly has gained no unfair advantage in bankruptcy court. Any recovery he obtains from defendant will inure to the benefit of plaintiff's bankruptcy estate, and in turn, to the credi-

tors who asserted claims to the estate's assets. Due to the bankruptcy court's decision to reopen the Chapter 7 case and its acceptance of the amendment to the schedules plaintiff filed with that court, it also cannot be said that plaintiff's present position in the trial court is "inconsistent with one successfully and unequivocally asserted by [him] in a prior proceeding." (Citation, indentation and emphasis omitted.) *Pittman v. Massachusetts Mut. Life Ins. Co.*, 904 FSupp. 1384, 1386-1387 [3, 4] (S.D. Ga. 1995). By necessity, plaintiff's amended bankruptcy petition and the fact that his bankruptcy case was reopened so as to allow creditors to pursue any claims they might have, negates any conclusion to the contrary. Accordingly, the trial court erred in applying the doctrine of judicial estoppel to bar plaintiff's tort action against defendant.

*Judgment reversed. Beasley, C. J., McMurray, P. J., Blackburn and Ruffin, JJ., concur. Andrews, Johnson and Smith, JJ., dissent. Birdsong, P. J., disqualified.*

ANDREWS, Judge, dissenting.

I respectfully dissent, as the record reveals Johnson *did* successfully manipulate the court system and obtain a complete discharge of his debts without scheduling this personal injury claim, a potentially valuable asset. Not until after Trust Company moved for summary judgment based on judicial estoppel did Johnson file a motion with the bankruptcy court to reopen his bankruptcy case. Armed with affidavits showing he told his attorneys about this personal injury claim but the attorneys failed to schedule it, Johnson persuaded the bankruptcy court to grant his motion and allow him to amend his schedules to list this claim as an asset. But prior to his original discharge, Johnson and his attorneys told the bankruptcy trustee *nothing* about his planned personal injury claim, even though he stated he had been shot at the ATM and had suffered damage to his car in the process. This significant omission made under oath, combined with the fact that Johnson made no effort to correct the omission until it threatened the viability of his personal injury claim, gave the trial court more than sufficient reason to apply judicial estoppel.

"The doctrine of judicial estoppel 'is directed against those who would *attempt* to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings.' [Cit.]" (Emphasis supplied.) *Chrysler Credit Corp. v. Rebhan*, 842 F2d 1257, 1261 (11th Cir. 1988). Johnson's misrepresentation to the bankruptcy court allowed him to be discharged from his debts and begin anew with an unencumbered asset: the claim against Trust Company. See *Payless Wholesale Distrib. v. Alberto Culver (P.R.), Inc.*, 989 F2d 570, 571 (1st Cir. 1993). Having been "caught" in his failure to include this asset in his bankruptcy estate, Johnson informed the bankruptcy

court of it nine months after that court closed his case. His shifting of positions constitutes exactly the kind of "playing fast and loose with the courts" which the judicial estoppel doctrine is designed to prevent. (Citations and punctuation omitted.) *Allen v. Zurich Ins. Co.*, 667 F2d 1162, 1166 (4th Cir. 1982). " 'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, *simply because his interests have changed*, assume a contrary position.' *Davis v. Wakelee*, 156 U. S. 680, 689 [(15 SC 555, 39 LE 578)] (1895)." (Emphasis supplied.) *In the Matter of Thomas V. Cassidy*, 892 F2d 637, 641 (7th Cir. 1990). The judicial estoppel doctrine applies with full force here because Johnson "acted inconsistently in such a degree and manner to offend the judicial process and properly preclude him from now raising" this claim against Trust Company. *Guinness PLC v. Ward*, 955 F2d 875, 898 (4th Cir. 1992); accord *Rebhan*, supra. I would, therefore, uphold the trial court's judgment as an appropriate disciplinary remedy for Johnson's actions, notwithstanding his last-minute effort to "come clean" and make amends to the bankruptcy court.

I am authorized to state that Judge Johnson and Judge Smith join in this dissent.

DECIDED NOVEMBER 22, 1996 — 

*Maurice J. Bernard III, Curtis A. Thurston, Jr.*, for appellant.
*Webb, Carlock, Copeland, Semler & Stair, Frederick M. Valz III, Scott D. Huray*, for appellee.