A98A1174. SUPERGLASS WINDSHIELD REPAIR, INC. et al.
v. MITCHELL.
(504 SE2d 38)

BLACKBURN, Judge.

Superglass Windshield Repair, Inc. and several members of its board of directors appeal the trial court's grant of Walter D. Mitchell's motion to enforce a settlement agreement with regard to his action for misappropriation of trade secrets, breach of contract, breach of fiduciary duties, fraud, and conversion of certain windshield repair technology. For the reasons set forth below, we affirm.

"The issues raised in this appeal are analogous to those in a motion for summary judgment. *Southern Med. Corp. v. Liberty Mut. Ins. Co.*, 216 Ga. App. 289, 291 (454 SE2d 180) (1995). Our review is de novo. (Cit.) *Bandy v. Mills*, 216 Ga. App. 407 (454 SE2d 610) (1995). To prevail, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." (Punctuation omitted.) *Ballard v. Williams*, 223 Ga. App. 1 (476 SE2d 783) (1996).

On January 21, 1997, Mitchell filed this action against Superglass, David A. Casey, William C. Costello, S. Martin Agnew, Jr., and Ramona W. Agnew. All of the individuals named were members of Superglass' board of directors. The defendants filed a joint answer and counterclaim on February 26, 1997; however, such answer was timely only for Superglass, itself, as the time in which the individual defendants could file answers had expired. On April 16, 1997, Mitchell filed a motion for a default judgment against the individual defendants based on their failure to answer, and a hearing on the motion was scheduled for June 4, 1997.

Prior to the hearing, the parties entered into settlement negotiations. On June 2, 1997, Sherry Judson Waites II, counsel for defendants, sent a proposed settlement agreement to Mitchell's attorney, Randolph G. Rich. A settlement was not reached at that time, however, and further discussions ensued. According to Mitchell, the only remaining settlement term left under contention at that time was whether payments to be made to him pursuant to the agreement would survive his death.

On the morning of June 4, 1997, the day of the default hearing, the parties continued to discuss the settlement, and they apparently reached an agreement as to all essential terms. When the hearing on the motion for default judgment commenced, Rich, who was accompanied by Waites, informed the judge that they had settled the case, but did not disclose the terms thereof. Waites made no statement to the contrary. Although Waites now claims that, in his mind, there

were still several items that had not been determined, he said nothing to this effect at the default hearing, and he said nothing to Rich or Mitchell on that day either. On that same day, Waites transmitted a letter by facsimile to Rich which stated: "This letter confirms that Bill Mitchell and the defendants in this case *agreed this morning to the terms of settlement*. The Settlement Agreement will incorporate the following [ten] essential terms, *which were agreed to this morning*. . . . Please find enclosed the proposed Settlement Agreement which incorporates the terms 1-10 above. Let me know at your earliest convenience whether this is acceptable." (Emphasis supplied.) In addition, Mitchell testified that he and Casey, Superglass' president, talked after the hearing about their relief that the case had been settled.

The revised settlement agreement to which Waites referred in his June 4, 1997 letter included the ten essential terms agreed upon by the parties; however, it also included a number of terms which the parties had never discussed and which were neither included in the June 2, 1997 draft of the agreement nor listed on Waites' June 4, 1997 letter. These new terms mainly included provisions for damages and remedies in case the agreement were violated. Although Mitchell contends that he never agreed to the unilateral changes made by Waites, he agrees that the remaining terms, as reflected in Waites' June 4, 1997 letter, were accepted by him.

In response to this revised settlement agreement, Mitchell suggested eight changes to the June 4, 1997 draft of the agreement to Rich's secretary while Rich was out of town. Mitchell testified that these changes were suggestions only and that he merely intended to discuss them with Rich. However, in Rich's absence, his secretary conveyed Mitchell's list to Waites on June 12, 1997. On June 19, 1997, Waites responded to Mitchell's suggested changes, indicating that he believed some would be acceptable to the defendants while others would not be. In this letter Waites stated: "You must know that these items are not negotiable other than what is stated herein. If these concessions do not satisfy your client, then the settlement is off." After further disagreement culminating in a purported revocation of the settlement by Waites, Mitchell filed a motion to enforce the settlement on August 20, 1997, which the trial court granted.

1. In its first enumeration of error, the defendant contends that no settlement was ever consummated in this action. We disagree.

"Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. Ordinarily, for an attorney to bind his client to a settlement agreement where there is a dispute as to terms, the agreement must be in writing. . . . *Tidwell v. White*, 220 Ga. App. 415, 417 (2) (469 SE2d 258)

(1996). See also *Penny Profit Foods v. McMullen*, 214 Ga. App. 740, 741 (2) (448 SE2d 787) (1994). The writing requirement may be satisfied by letters or documents prepared by the attorneys showing the terms of the agreement. Id." (Punctuation omitted.) *Ballard*, supra at 2. Furthermore, "[o]ral settlement agreements are enforceable if their existence is established without dispute, but where the very existence of the agreement is disputed, it may only be established by a writing." (Punctuation omitted.) *Reichard v. Reichard*, 262 Ga. 561, 564 (2) (423 SE2d 241) (1992).

In this case, there was both an oral settlement agreement which occurred on June 4, 1997 and writings setting out the essential terms of that agreement, namely the June 2, 1997 and June 4, 1997 settlement agreements along with Waites' June 4, 1997 correspondence listing ten essential terms forming the backbone of the settlement. In the latter, Waites stated without reservation that the parties had agreed to the terms of their settlement. In addition, Mitchell has indicated that he accepted the terms of Waites' settlement offer, except for the terms which had not been discussed and which Waites unilaterally inserted into the June 4, 1997 proposed settlement agreement. Therefore, as of June 4, 1997, a settlement had been reached, without regard to any subsequent correspondence between the parties regarding further modifications. Waites' suspicious denial, after the fact, that he personally did not think that a binding agreement had been entered into makes no difference. "A party's denial that an agreement was reached is, however, immaterial where it is undisputed that the attorney for the party denying the agreement communicated acceptance of the settlement offer." (Punctuation omitted.) *Penny Profit Foods*, supra at 742. We also point out that the subsequent negotiations by the parties after settlement was reached with regard to other terms relating to default and damages does not vitiate the June 4, 1997 settlement.

2. In its second enumeration of error, Superglass contends that the trial court erred in its construction of the settlement agreement based on the correspondence passed between the parties. In essence, the trial court merged the settlement agreement proposed by Waites on June 2, 1997 with the terms listed in his June 4, 1997 letter. Almost the same result may be achieved by taking the June 4, 1997 proposed settlement agreement and deleting the terms inserted unilaterally by Waites. Either way, the agreement fashioned by the trial court incorporates those terms which the parties discussed prior to settlement. We find this construction to be reasonable.

As explained above, the settlement agreement in this matter became binding on the morning of June 4, 1997, as all essential terms had been agreed on at that time. Based upon Mitchell's testimony as well as the unequivocal statements made by Waites in his

June 4, 1997 letter, the court correctly determined that the settlement reached by the parties consisted of the June 2, 1997 settlement agreement as modified by the essential terms accepted on June 4, 1997. Waites' correspondence clearly indicates that such terms formed the settlement, and Mitchell agrees that the trial court's order accurately reflected the settlement which he had accepted. Furthermore, as noted above, subsequent negotiations by the parties after settlement was reached with regard to other terms relating to default and damages does not vitiate the June 4, 1997 settlement. Accordingly, the trial court did not err in its construction of the terms of the settlement.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JULY 1, 1998.

*Kirby L. Turnage, Jr.,* for appellants.
*Rich & Smith, Randolph G. Rich,* for appellee.