A98A1164, A98A1165. CLARK v. PERINO et al.; and vice versa.
(509 SE2d 707)

POPE, Presiding Judge.

These cases arise out of an automobile collision which occurred on May 3, 1990. Nancy Clark sued Juliana Domenica Perino for negligence and alleged that at the time of the accident Perino was acting within the course and scope of her employment with IBM Corporation, which was also named in the suit. Clark appealed from the grant of summary judgment to Perino and IBM on the ground of judicial estoppel. Perino and IBM filed a cross-appeal from the denial of their Motion to Enforce Settlement.

### Case No. A98A1164

"In determining whether the trial court properly granted summary judgment . . . we review the record de novo, construing the evidence and all inferences from the evidence strongly in favor of the nonmoving party." *Lane v. Spragg*, 224 Ga. App. 606 (481 SE2d 592) (1997). Construed in this light, the record shows that in 1991 Clark filed a lawsuit against Perino and IBM in the State Court of DeKalb County arising out of the 1990 accident. In 1994, while this action was pending, Clark filed a Chapter 7 bankruptcy petition in Florida but did not identify her claims against Perino and IBM as a potential asset of her bankruptcy estate. She failed to list the claims on her verified personal property schedule, which requested that she disclose "contingent and unliquidated claims of every nature." Additionally, Clark failed to identify the DeKalb County action on her Statement of Financial Affairs, which asked for "all suits to which the debtor is or was a party within one year immediately preceding the filing of" her bankruptcy petition.

Clark testified on deposition that she filed her bankruptcy petition pro se after obtaining the appropriate forms from a service that provided blank forms and sent them, when completed by the customer, to the bankruptcy court. Because this service did not provide its customers with any advice on how to complete the required paperwork, Clark completed her bankruptcy without assistance. She never consulted legal counsel and never discussed her case with the bankruptcy trustee. Clark explained that she did not list her claims against Perino and IBM because she did not know that the disclosure was required. She said that she did not understand what the term

"unliquidated claims" on the Schedule of Personal Property meant. She also testified that she interpreted the question on the Schedule of Financial Affairs to refer only to lawsuits filed in the year prior to the bankruptcy, and thus did not include the DeKalb County action, which was filed in 1990. In August 1994, the bankruptcy court granted Clark a discharge.

Clark subsequently dismissed her DeKalb County action without prejudice, and then hired new counsel to file the current case as a renewal action in the State Court of Fulton County in September 1996. After Clark's current counsel discovered that Clark had not disclosed her claims against Perino and IBM in her bankruptcy, and after the matter was raised by opposing counsel in Clark's deposition, Clark filed a motion to reopen the bankruptcy. The bankruptcy court ordered the bankruptcy reopened to allow Clark to file amended schedules listing the claims against Perino and IBM.

Perino and IBM filed a motion for summary judgment asserting that Clark's claims against them were barred by the doctrine of judicial estoppel due to her failure to disclose the claims in her original bankruptcy filings. The trial court agreed and granted the motion. We reverse.

1. The doctrine of judicial estoppel arises under federal law and precludes a party from asserting a position in one judicial proceeding which is inconsistent with a position successfully asserted by the party in an earlier proceeding. "[T]he essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary." (Citations and punctuation omitted.) *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455 (442 SE2d 265) (1994). "The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings." (Citations and punctuation omitted.) *Johnson v. Trust Co. Bank*, 223 Ga. App. 650, 651 (478 SE2d 629) (1996).

Courts have viewed the failure to identify accrued claims in accordance with bankruptcy's "stringent disclosure requirements" to amount "to a denial that such claims exist," and the subsequent assertion of such claims to amount to a contradictory position in violation of the judicial estoppel doctrine. *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. at 456.

Although Clark failed to list the claims when she prepared her original pro se bankruptcy filings, she later obtained permission to correct this omission and amend her filings to include the claims.

"[B]ecause [Clark] successfully has amended [her] bankruptcy petition to include any claim against [Perino and IBM] as a potential asset, [she] clearly has gained no unfair advantage in bankruptcy court. Any recovery [s]he obtains from [Perino and IBM] will inure to the benefit of [her] bankruptcy estate, and in turn, to the creditors who asserted claims to the estate's assets. Due to the bankruptcy court's decision to reopen the Chapter 7 case and its acceptance of the amendment to the schedules [Clark] filed with the court, it also cannot be said that [Clark's] present position in the trial court is inconsistent with one successfully and unequivocally asserted by [her] in a prior proceeding." (Citation and punctuation omitted.) *Johnson v. Trust Co. Bank*, 223 Ga. App. at 651-652.

In *Johnson* this Court reversed the grant of summary judgment on the ground of judicial estoppel. While the *Johnson* plaintiff obtained a Chapter 7 discharge after failing to identify potential tort claims in his bankruptcy schedules, he later moved to reopen his bankruptcy to amend his schedules to reflect the claims. In reversing summary judgment, we relied upon this amendment as well as evidence that plaintiff had mentioned his claim to both his attorney and the bankruptcy trustee and even had referenced the claim in one of his schedules. *Johnson v. Trust Co. Bank*, 223 Ga. App. at 651. Although there is no evidence that Clark disclosed her claims to anyone, unlike the plaintiff in *Johnson*, Clark was not represented by counsel and completed her forms without assistance. She presented evidence that she misunderstood some of the questions. This evidence and the amended bankruptcy filings are sufficient to preclude summary judgment on the issue of judicial estoppel.[1] See *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 124-125 (1) (483 SE2d 135) (1997) (judicial estoppel claim fails where plaintiff obtained permission to amend bankruptcy papers to include previously omitted claims). Compare *Byrd v. JRC Towne Lake, Ltd.*, 225 Ga. App. 506, 507-508 (484 SE2d 309) (1997) (judicial estoppel applies where plaintiff failed to read the bankruptcy papers even though she signed a verification, and also failed to petition to reopen her bankruptcy proceeding); *Southmark v. Trotter, Smith & Jacobs*, 212 Ga. App. 454 (judicial estoppel applied where plaintiff did not seek permission to reopen bankruptcy to include omitted claims).

---

[1] Although we find this evidence sufficient to preclude summary judgment on this issue, questions of credibility may remain as to whether Clark's actions in failing to report the DeKalb action in her bankruptcy proceeding were an attempt to manipulate the system. While for purposes of summary judgment we accept as true her statements that she did not understand the questions in the bankruptcy schedules, it is up to the trial court to determine matters of credibility.

Accordingly, we reverse the trial court's order granting summary judgment to Perino and IBM.

### Case No. A98A1165

2. Because we have determined that summary judgment was not properly granted, we now consider the cross-appeal filed by Perino and IBM in connection with the denial of their motion to enforce settlement.

The issues raised on an appeal from a denial of a motion to enforce settlement are analogous to those in a motion for summary judgment. *Superglass Windshield Repair v. Mitchell*, 233 Ga. App. 200 (504 SE2d 38) (1998); *Ballard v. Williams*, 223 Ga. App. 1 (476 SE2d 783) (1996). Therefore, "the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion." *Stacey v. Jones*, 230 Ga. App. 213, 214 (1) (495 SE2d 665) (1998).

The facts pertinent to this appeal show that in early May 1994 while Clark's DeKalb County action was still pending, she was represented by Franklin E. Parker of the law firm of Deming, Deming, Born & Parker, P.C. On May 10, 1994 Parker phoned Clark to recommend that she settle the DeKalb action for $25,000. Clark states that she told Parker that she would not settle for that amount, and further that she discharged Parker as her attorney during the conversation. Clark's husband signed an affidavit stating that he was with Clark during the May 10 phone conversation and heard her fire Parker. Parker, however, signed an affidavit asserting that he was employed as Clark's attorney through June 1994 and further that Clark specifically authorized him to accept a settlement offer of $25,000 on May 19, 1994.

On that date, Parker negotiated a settlement with Neal C. Scott, counsel for Perino and IBM. At no time during the course of the settlement discussions did Parker communicate that he had been discharged as Clark's counsel or that there was any limitation on his authority to enter into a settlement on behalf of Clark. The parties' agreement to settle Clark's claims for the sum of $25,000 was confirmed by a letter dated May 20, 1994 from Scott to Parker.

After Parker sent Clark the settlement documents for her execution, she wrote him a letter stating that she did not accept the $25,000 settlement, and stating a list of conditions she would require for any settlement, including payment of an amount in excess of $1.5 million. The letter further noted "[i]f you and your firm do not present the [conditions listed] to Perino/IBM, it is my wish that you and your firm no longer represent me in this matter. . . ." Parker asserts

that this letter was his first indication that Clark wished to terminate his representation. In August 1994, Parker and his firm moved to withdraw as counsel of record, and their motion was granted on September 8, 1994. Scott states that he had no notice that Clark disputed Parker's authority to enter into a settlement agreement on her behalf until he received Parker's motion to withdraw.

"Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties." (Citations omitted.) *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 675 (308 SE2d 544) (1983).

Clark does not dispute that Parker entered into a settlement on her behalf on May 19, 1994, but claims that at the time he entered into the settlement Parker was no longer her attorney and thus had no authority to act on her behalf. While there is a dispute in the record as to when Clark discharged Parker, for purposes of this appeal we must accept her statement that she fired him nine days before the settlement was entered.

While prior Georgia cases addressing the enforceability of settlement agreements have not addressed an instance when a client claims to have terminated her attorney prior to a settlement, under general principles of agency law, "[t]he termination of authority does not thereby terminate apparent authority." Restatement, Law of Agency 2d, § 124 A. As the comments to the Restatement explain, "If there was apparent authority previously, its existence is unaffected until the knowledge or notice of the termination of authority comes to the third person, except when all agency powers are terminated without notice by death, loss of capacity by the principal or an event making the authorized transaction impossible." Id. at comment a.

It is undisputed that no one communicated to Scott that Parker had been discharged or that any limitation on his authority existed. To the contrary, Parker was Clark's attorney of record in the case, and Scott was entitled to rely on Parker's apparent authority to enter into a settlement on her behalf. "In other words, where the dispute as to an agreement is not between opposing parties but is, rather, between the attorney and client over the attorney's authority, and where the opposite party is ignorant of any limitation upon the attorney's authority, the client will be bound by his attorney's actions." *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. at 676. And as in this case, where "there is no challenge to the existence or the terms of

an agreement but only to an attorney's authority to enter into it, the client is bound by its terms even in the absence of a writing or detrimental reliance on the part of the opposite party." Id. at 676-677.

Therefore, even if Clark had fired Parker prior to the settlement, this fact alone does not render the settlement unenforceable where opposing counsel had no notice of the termination when the settlement was entered. See generally *Green v. Lanford*, 222 Ga. App. 480, 481 (474 SE2d 681) (1996); *Dickey v. Harden*, 202 Ga. App. 645 (414 SE2d 924) (1992); *Hynko v. Hilton*, 198 Ga. App. 308, 310 (401 SE2d 324) (1991). Compare *Pembroke State Bank v. Warnell*, 266 Ga. 819, 823 (4) (471 SE2d 187) (1996) (settlement agreement not enforced against two parties who never established· attorney-client relationship with attorney who negotiated settlement); *Addley v. Beizer*, 205 Ga. App. 714, 721 (423 SE2d 398) (1992) (settlement negotiated by corporate attorney not enforceable against corporate officers, who had not established independent attorney-client relationship with corporate attorneys).

In making this ruling, we are mindful that this Court previously has raised concerns about the harshness of a doctrine binding a client to a settlement he did not authorize. See *Lewis v. Uselton*, 202 Ga. App. 875 (416 SE2d 94) (1992); *Vandiver v. McFarland*, 179 Ga. App. 411 (346 SE2d 854) (1986). It may seem harsher still to hold that a client may be bound to an agreement entered into by an attorney whom he no longer employs. However, the rule outlined in *Brumbelow* focuses on the interests of opposing parties and puts the burden of communicating any limitation of an attorney's authority on the party seeking to disavow the settlement. "The client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party." *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. at 675; *Pembroke State Bank v. Warnell*, 266 Ga. at 821.

Therefore, we are bound by *Brumbelow*, as well as general principles of agency law, to hold that where an opposing party has not received notice that an attorney's authority has been terminated, or otherwise limited, he may rely upon the attorney's apparent authority to bind his client.

3. Alternatively, Clark claims that Scott could not have relied on Parker's apparent authority because, at the time of the settlement negotiations, Scott had questions regarding Parker's authority to accept his $25,000 offer. In support of this argument, Clark relies upon the affidavit of Thomas J. Ousley,[2] the attorney she hired to

---

[2] Perino and IBM contend that the trial court did not rely upon Ousley's affidavit, filed

handle the case after Parker withdrew as counsel of record.

Ousley's affidavit states that in 1995 he had conversations with Scott concerning the May 19, 1994 settlement agreement. In those conversations, Ousley says that Scott told him "that he was surprised when Mr. Parker accepted the settlement offer and that he had questions in his mind at the time the offer was accepted because of the context in which the offer was accepted. Mr. Scott stated that he was surprised because essentially the same settlement had been offered for a long time and, it was his understanding that Mrs. Clark had repeatedly refused to accept the offers. Mr. Scott said that he was also surprised about the manner in which Mr. Parker accepted the offer in that it seemed that apparently Mr. Parker did not get confirmation from his client prior to accepting the offer."

Perino and IBM contend that this affidavit contains impermissible hearsay, conclusions and speculation and thus cannot be considered as evidence in connection with their motion. However, Perino and IBM failed to raise these objections in the trial court. " 'Objections to affidavits such as these will not be entertained for the first time on appeal where such affidavits were considered by the trial judge, without objection, in ruling on motions for summary judgment.' *Chapman v. McClelland*, 248 Ga. 725, 726 (2) (286 SE2d 290) (1982). See also *Neese v. Britt Home Furnishings*, 222 Ga. App. 292 (474 SE2d 44) (1996)." *Smith v. U-Haul Co. Ga.*, 225 Ga. App. 356, 359 (4) (484 SE2d 49) (1997).

Nevertheless, hearsay has no probative value and cannot be considered as evidence in a summary judgment proceeding. *Neese v. Britt Home Furnishings*, supra, 222 Ga. App. 292 (1), n. 1. Pretermitting the issue of whether Ousley's affidavit contained impermissible hearsay, we hold that even if Scott were "surprised" in May 1994 that Parker accepted the previously rejected offer of $25,000, without apparently consulting his client, this surprise did not prevent him from relying upon Parker's apparent authority. The fact that a plaintiff chooses to accept a settlement in an amount less than her claimed damages does not mean that an opposing counsel should have known of a lack of authority to settle the case. *Green v. Lanford*, 222 Ga. App. at 481; *Hynko v. Hilton*, 198 Ga. App. at 309. The fact that this acceptance represented a change in a party's prior position on settlement also is insufficient to support such a finding. Any number of reasons could explain such a change of heart.

Further, the fact that Parker did not appear to consult Clark at

---

12 days before the court's order denying their motion to enforce the settlement. However, "[i]n the absence of evidence to the contrary, we will presume that the trial court reviewed the entire record. . . ." *E. H. Crump Co. v. Millar*, 200 Ga. App. 598, 600 (2) (409 SE2d 235) (1991).

the time of the settlement does not mean that Scott should have doubted his authority. Scott was entitled to rely upon Parker's status as Clark's attorney of record as the basis for his authority to bind Clark to a settlement, unless and until any limitation on that authority was communicated to him. *Brumbelow*, supra.

*Judgments reversed. Beasley and Ruffin, JJ., concur.*

DECIDED NOVEMBER 23, 1998

*Calabro & Jennette, Larry F. Jennette, Jr.*, for appellant.
*Neal C. Scott*, for appellees.