A01A1058. COCHRAN v. EMORY UNIVERSITY.
(555 SE2d 96)

ANDREWS, Presiding Judge.

Kathy Cochran appeals from the trial court's order granting summary judgment to Emory University on Cochran's medical malpractice claim. The court held that Cochran was judicially estopped from asserting the claim because she had failed to list it as a potential asset in her bankruptcy case. Cochran claims on appeal that the trial court should have granted her motion for reconsideration of its summary judgment order because she subsequently moved to reopen her bankruptcy case. Because the trial court correctly found that the petition to reopen the bankruptcy was untimely, we affirm.

This case arose when Cochran went to Crawford Long Hospital for the birth of her baby on January 2, 1996. During the delivery, doctors administered epidural anesthesia through a catheter in her back. Cochran began having physical problems after the baby's birth and decided to have a CT scan and MRI done in either October or November 1997 at the facility where she worked as a radiology technician. Cochran said she was present when the doctor interpreted the CT scan and he told her there was a foreign body between her second and fourth lumbar vertebrae. This was later determined to be the tip of the catheter used to administer the anesthesia during delivery.

The Cochrans filed a bankruptcy petition on March 11, 1997. In that petition, Cochran was required to list all "contingent and unliquidated claims of every nature." Cochran left this section blank. On June 27, 1997, the bankruptcy court discharged the Cochrans' debts and closed the bankruptcy. Cochran filed the instant suit against Emory University on December 31, 1997, approximately six months after the bankruptcy discharge.

Emory filed a motion for summary judgment, contending that Cochran was judicially estopped from bringing the medical malpractice claim. Cochran responded, claiming that she told her bankruptcy attorney about the foreign object in her back but he told her that because she did not have a suit filed or a claim made, she need not

disclose it on her bankruptcy petition.

The court granted Emory's motion, finding that this misapprehension did not relieve Cochran of her duty to disclose the potential claim. The trial court also noted that Cochran never moved to reopen her bankruptcy case and amend her petition. The court's order granting Emory's motion for summary judgment was filed on January 25, 1999. On February 10, 1999, Cochran moved to reopen her bankruptcy case.

Cochran then filed a motion for reconsideration of the court's order granting summary judgment to Emory, claiming the court should reconsider in light of her petition to reopen the bankruptcy. The court denied the motion, finding that Cochran's attempts to amend her petition were untimely and made only after she received the unfavorable order on summary judgment. Cochran now appeals, claiming the trial court erred in granting summary judgment to Emory because she took steps to reopen her bankruptcy case.

> The federal doctrine of judicial estoppel precludes a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding. This doctrine is commonly applied to preclude a bankruptcy debtor from pursuing a damages claim that he failed to include in his assets in the bankruptcy petition. A failure to reveal assets, including unliquidated tort claims, operates as a denial that such assets exist, deprives the bankruptcy court of the full information it needs to evaluate and rule upon a bankruptcy petition, and deprives creditors of resources that may satisfy unpaid obligations. The application of the doctrine preserves the integrity of the judicial forum by not permitting a debtor to take inconsistent positions to manipulate the system.

(Punctuation and footnotes omitted.) *Wolfork v. Tackett*, 273 Ga. 328-329 (540 SE2d 611) (2001).

"The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary." *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455 (442 SE2d 265) (1994).

1. Cochran opposed the motion for summary judgment by arguing that judicial estoppel should not apply because she did not intend to deceive anyone and the reason she did not list the tort claim in her bankruptcy case was because her lawyer told her it was not necessary. As previously stated, the trial court correctly found this was no defense, citing *Byrd v. JRC Towne Lake*, 225 Ga. App. 506 (484 SE2d 309) (1997). Accord *Wolfork,* supra.

2. In her motion for reconsideration and now on appeal, Cochran claims that because she moved to reopen her bankruptcy petition, judicial estoppel should not apply. It is true that this Court has held that judicial estoppel does not apply when a plaintiff has successfully amended her petition to include any claim against the defendant as a potential asset. Under those circumstances, it cannot be said that the present position in the trial court is inconsistent with the position asserted by plaintiff in a prior proceeding and, therefore, judicial estoppel does not bar her claim. *Clark v. Perino,* 235 Ga. App. 444, 446 (509 SE2d 707) (1998); *Johnson v. Trust Co. Bank,* 223 Ga. App. 650, 651 (478 SE2d 629) (1996).

Cochran relies on *Johnson,* supra, in support of her argument on appeal; however, *Johnson* is not on point. In that case, plaintiff moved to amend his petition after defendant raised the bar of judicial estoppel in its motion for summary judgment. Id. at 651. Here, Cochran chose to respond to the motion and await the trial court's order instead of moving to reopen her bankruptcy case.

Whether to grant a motion for reconsideration after ruling on an issue lies within the sound discretion of the trial court. See generally *Buffington v. Gold Kist,* 179 Ga. App. 393, 394 (346 SE2d 577) (1986). Here, Cochran was on notice of Emory's intention to raise a judicial estoppel defense for over two months after the motion for summary judgment was filed and before the court entered its order. Yet Cochran did not petition to reopen her bankruptcy until over two weeks after the entry of the court's order granting summary judgment. Moreover, at the time she filed her motion for reconsideration with the trial court, there had been no decision by the bankruptcy court on whether to allow her to reopen the case. On these facts, it was clearly within the sound discretion of the trial court to find that Cochran "did not act with the requisite diligence" after the bar of judicial estoppel was raised.

*Judgment affirmed. Johnson, P. J., Ruffin and Ellington, JJ., concur and concur specially. Miller, J., concurs specially. Eldridge and Barnes, JJ., dissent.*

MILLER, Judge, concurring specially.

Although I greatly empathize with the plaintiff's plight, I am constrained by binding precedent to agree with the trial court's conclusion that judicial estoppel bars plaintiff's claim. Ignoring the clear guidance given by this Court in prior decisions, plaintiff's counsel failed for months to reopen and amend her bankruptcy petition even after she clearly had a cause of action for her injury and after Emory University moved for summary judgment on the grounds of judicial estoppel. Therefore, I feel it is necessary to write separately to emphasize certain points.

Two cases are painfully clear on the issue of judicial estoppel in these circumstances. In *Clark v. Perino*,[1] the plaintiff acted pro se in her bankruptcy petition and failed to list a personal injury cause of action *due to ignorance*. Once the bankruptcy was over, opposing counsel in a deposition in the personal injury cause of action raised the omission, whereupon plaintiff successfully moved to reopen the bankruptcy to amend her asset schedule to include the omitted cause of action.[2] Asserting judicial estoppel, defendants then moved for summary judgment, which the trial court granted. We reversed, holding that although judicial estoppel would normally bar the cause of action, the plaintiff's actions in promptly and successfully seeking to reopen and amend her bankruptcy schedule precluded the application of the doctrine.[3] We pointed out that in these circumstances a jury could find that the plaintiff had not manipulated the court system to her advantage, and that the claim would inure to the benefit of the creditors.[4]

Here Cochran learned of her cause of action against Emory no later than November 27, 1997. Cochran's counsel then filed suit against Emory, and even though counsel received Emory's motion for summary judgment accusing Cochran of failing to list the claim in. her bankruptcy asset schedule, her counsel did nothing to reopen the bankruptcy and to amend the proper asset schedule until February 10, 1999 — some 15 months after Cochran and her counsel knew of the claim. In the meantime, the trial court entered summary judgment against Cochran. Even though Cochran is excused from listing the claim originally, plaintiff and plaintiff's counsel's later dilatory conduct after full knowledge is inexcusable and is an obvious manipulation of the court system to Cochran's benefit.[5] Judicial estoppel is designed to prevent this very kind of misconduct.

The other controlling case is *Harper v. GMAC Mtg. Corp.*[6] In *Harper* we reviewed the case law in this area, including a quote from *Reagan v. Lynch*,[7] where the bar was instructed that "a party like the plaintiff in this case can avoid the application of judicial estoppel simply by filing a motion to amend the debtor's bankruptcy petition or a motion to reopen the debtor's bankruptcy case to declare the omitted claim or cause of action."[8] *Harper* concluded: "After the filing of the motion to dismiss, the [plaintiffs] were aware that they faced

---

[1] 235 Ga. App. 444 (509 SE2d 707) (1998).

[2] Id. at 445.

[3] Id. at 445-446 (1).

[4] Id. at 446 (1).

[5] See *Reagan v. Lynch*, 241 Ga. App. 642, 645 (524 SE2d 510) (1999).

[6] 245 Ga. App. 729 (538 SE2d 816) (2000).

[7] Supra, 241 Ga. App. at 645 (Barnes, J., concurring specially).

[8] (Punctuation omitted.) *Harper*, supra, 245 Ga. App. at 732 (1).

dismissal if they did not seek to amend their bankruptcy asset schedule. Despite the passage of ten weeks, they chose not to do so and thereby forfeited their right to pursue the damage claims."[9]

Similarly, on October 16, 1998, Cochran and her counsel received Emory's motion for summary judgment asserting her failure to list the claim as a bankruptcy asset, but did nothing to reopen the bankruptcy and to amend the asset schedule for more than 14 weeks. Cochran "thereby forfeited [her] right to pursue the damage claims."[10] After the trial court correctly granted summary judgment on January 25, 1999, then and only then (and then not even for two more weeks) did Cochran's counsel file a pleading to reopen the bankruptcy to allow the cause of action to inure to the creditors' benefit. Under the binding holding of *Harper* which involved ten weeks, I am constrained to find that the trial court did not err in concluding that Cochran's conscious decision for fourteen weeks not to seek to correct the asset schedule authorized the application of judicial estoppel to bar her claim. For these same reasons, the trial court did not abuse its discretion in denying the motion for reconsideration.[11]

The dissent focuses its analysis on Cochran's inability, despite reasonable diligence, to discover the cause of her injury until after the bankruptcy action was over. The dissent concludes that Cochran was excused from listing the claim on her bankruptcy petition because "[t]here should be no duty to schedule the claim on the bankruptcy petition until the cause of action has been discovered as a potential claim." I agree completely with the dissent on this point. I disagree, however, with the dissent's conclusion that because Cochran was initially excused from listing the asset in her bankruptcy schedules, she was therefore justified in not seeking timely to amend those schedules once she discovered the claim. The dissent ignores (1) the 14-week interval between Emory's motion for summary judgment asserting the failure to list this asset and the trial court's entry of summary judgment on this point, during which time Cochran's counsel did nothing to reopen the bankruptcy and to amend the appropriate schedule, and (2) the overall 15-month delay between Cochran's discovery of the cause of her injury and her counsel's belated attempt to amend her bankruptcy schedule, which attempt occurred only after Cochran lost on Emory's motion for summary judgment raising this issue. Since the case law is so clear on the forfeiture effect of such dilatory conduct, I am compelled to con-

---

[9] Id. at 733 (1).
[10] Id.
[11] See *Adams v. Seay*, 62 Ga. App. 589, 591-592 (9 SE2d 117) (1940) (motion for reconsideration is addressed to the sound discretion of the court). But see *Harper*, supra, 245 Ga. App. at 732-733 (1).

clude that judicial estoppel applies to bar Cochran's claim.

I am authorized to state that Presiding Judge Johnson, Judge Ruffin and Judge Ellington join in this special concurrence.

ELDRIDGE, Judge, dissenting.

I respectfully dissent.

This case raises issues of first impression as to: (a) whether judicial estoppel should be a bar to a medical malpractice action because the plaintiff failed to schedule the undiscovered malpractice claim as an asset at the time of filing in a Chapter 7 bankruptcy petition; and (b) whether the trial court abused its discretion in denying the motion for reconsideration of the grant of summary judgment so as to allow the plaintiff to show that she was amending and reopening the bankruptcy to schedule such claim, which claim she discovered after the discharge in bankruptcy.

On January 2, 1996, Kathy Thompson Cochran underwent an epidural catheterization of her spine as part of the delivery of her baby at Emory University d/b/a Crawford Long Hospital. In October 1996, Cochran, an employee of a CT scanning facility, volunteered for a scan to be performed on her spine as part of the calibration of a new machine. The radiologist discovered a foreign body in her spine but did not identify the foreign body at that time or how it got there. Subsequently, on August 19, 1997, Cochran went to a personal injury law firm regarding the foreign object in her spine to determine if there was a potential claim against anyone, and these lawyers sent her to be examined in Athens by a radiologist to determine if there was a potential claim. The radiologist could only confirm the presence of a foreign body but could neither identify it nor determine the source. Finally on October 27, 1997, for the first time, the original radiologist, on request of plaintiff's counsel for a reevaluation of the CT scan, determined that the foreign body was a catheter tip. Since plaintiff's only catheterization was during her delivery, then this determination also identified the source, cause, and potential defendant for the first time. At this time, plaintiff knew for the first time that she had sustained a potentially actionable tortious injury, resulting from her epidural catheterization by the defendant.

However, previously on March 11, 1997, Mr. and Mrs. Cochran filed for bankruptcy under Chapter 7. At that time, they informed their bankruptcy attorney of the presence of the foreign body in her spine, which was all that they knew then; the bankruptcy lawyer advised them that in his opinion there existed no viable claim for medical malpractice, because the object was unidentifiable, and therefore, the claim did not have to be scheduled in the bankruptcy petition as a potential claim. On June 27, 1997, the Cochrans were

discharged in bankruptcy without the possible malpractice claim ever being scheduled.

On December 31, 1997, plaintiff sued the defendant in the State Court of Fulton County after her discharge in bankruptcy. On February 10, 1998, the defendant answered the suit without raising the defense of judicial estoppel. On October 16, 1998, defendant filed its motion for summary judgment, raised for the first time the defense of judicial estoppel, and attached a copy of plaintiff's bankruptcy petition to its motion, showing that the malpractice claim had not been scheduled in the bankruptcy petition.

On January 25, 1999, the trial court granted the motion for summary judgment on the defense of judicial estoppel. On February 15, 1999, plaintiff moved for reconsideration of the grant of summary judgment based on judicial estoppel and submitted a copy of a motion to reopen the bankruptcy petition dated February 10, 1999, which scheduled the malpractice action. An extension of time to file the notice of appeal was granted. On March 30, 1999, the trial court denied the motion for reconsideration, because the amended bankruptcy petition was untimely.

(a) The harsh federal doctrine of judicial estoppel came into Georgia law through *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454 (442 SE2d 265) (1994), in which the plaintiff had filed bankruptcy and scheduled the defendants, their former counsel; after the reorganization had been approved, plaintiff sued its lawyers for pre-bankruptcy malpractice to reach their errors and omissions coverage as an asset on claims intentionally not scheduled in the bankruptcy petition. Judicial estoppel was applied to prevent the use. of intentional self-contradiction to obtain unfair advantage for the plaintiff against its former lawyers. Id. at 455.

> Thus, the essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. The doctrine does not require reliance or prejudice before a party may invoke it. These cases involve primarily the obligation placed upon the debtor in a . . . bankruptcy case to file a list of assets in which [the debtor] must disclose any litigation which might arise from pre-bankruptcy matters. Compliance with disclosure requirements is essential to maintaining a bankruptcy case. In . . . light of the stringent disclosure requirements under [the bankruptcy law], the failure to disclose such information is viewed as amounting to a denial that such claims ex-

ist. This de facto denial triggers the application of several types of issue preclusion to bar subsequent attempts to prosecute such actions. . . . While plaintiff attempts to excuse [her] failure to list the claims against defendant[ ] in the bankruptcy court by invoking the theory that [she] exercised "reasonable diligence" in investigating the potential causes of action which had been brought to [her] attention, this begs the question since plaintiff's knowledge of even a potential claim was subject to the disclosure requirements and provide[s] a sufficient basis for the application of judicial estoppel [where she was aware of a potential claim]. [Here we can] accept the suggestion that plaintiff's argument that circumstances are such as to warrant a deliberate change of position by [her] on the issue of whether [she] has claims against defendant[ ] without imposition of judicial estoppel [because her bankruptcy lawyer told her that she had no cause of action]. Cases adopting such a theory involve parties who[, as here,] are able to demonstrate how they were actively misled by the information available to them. Here, any deficiency in plaintiff's perceptions is [not] shown as arising from the press to complete the process within the bankruptcy court in a time frame which was advantageous to plaintiff [but to the absence of discoverable information that there existed a foreign object in her spine that was caused by the defendant as a potential medical malpractice claim].

(Citations and punctuation omitted.) Id. at 455-456.[12]

The facts and circumstances of this case raise for the first time what is a justifiable failure to schedule so as to avoid the doctrine of judicial estoppel and what constitutes a potential claim also for purposes of judicial estoppel. These issues, from the facts and circumstances of this case, should have been considered by the trial court in determining whether or not to reconsider its grant of summary judgment in the first place and whether or not the motion for summary judgment had been appropriately granted.

In this case, plaintiff was aware that there was a possible prob-

---

[12] An important fact omitted from the summary of the case in the opinion, which was tried before me as the trial judge, was that the reorganization barred defendant-former counsels' substantial unpaid fees that were scheduled in the bankruptcy and in the malpractice action could not be used in either counterclaim or set-off by the defendants. In the absence of such facts from the opinion but in the record, this may only be inferred from the opinion. It is interesting to note that no other judicial estoppel case has the defendant appear in the bankruptcy in any capacity and then as a defendant in a subsequent suit, which was an important factor in the federal cases.

lem with her spine, because there was information of a foreign body in her spine of unknown origin, but plaintiff was uncertain if there was a potential claim and sought guidance from her bankruptcy counsel who told her that this was not a potential claim that had to be scheduled. However, she had no actual knowledge that the foreign body constituted a tort action as a real potential claim until the personal injury lawyer advised her after her discharge in bankruptcy and the diagnosis by the radiologist in Athens confirmed the existence of a foreign body in her spine. Even then, there was no potential claim until the foreign body was identified and a potential defendant identified, who could be potentially liable. A fact question exists as to whether a potential cause of action arose with the October 1997 identification of the foreign body as a catheter tip or at an earlier date, starting the statute of limitation running by discovery of the injury. This identification of the catheter tip occurred over seven months after the filing of the bankruptcy complaint and three months after the discharge in bankruptcy.

Unlike the investigation of ordinary tort claims, this case required repeated and expensive diagnostic medical testing, medical expert opinion, and sophisticated legal advice from a medical malpractice lawyer to determine: (1) injury, i.e., presence of the catheter tip in her spine; (2) causation, i.e., catheter tip breaking off during the epidural catheterization at delivery; and (3) violation of a standard of care by physicians, technicians, or hospital personnel during delivery. Prior to these determinations, there existed no potential tort claim for medical malpractice.

Thus, all of these factors should have been considered by the trial court in reconsidering its grant of summary judgment under the totality of the circumstances, because the trial court should have recognized that this case involved issues of first impression that did not fit prior opinions.

(b) The defendant initially raised the affirmative defense of the statute of limitation in its answer and made this defense one of the two grounds for summary judgment; however, apparently realizing that the discovery rule raised factual issues as to discovery for jury determination, the defendant withdrew its motion on this ground for summary judgment and proceeded with the defense of judicial estoppel only. See *Spivey v. Whiddon*, 260 Ga. 502, 504 (397 SE2d 117) (1990).

If a plaintiff cannot be deemed to have discovered an injury so that they are under a duty of reasonable care to investigate and determine the cause of the injury for purposes of the statute of limitation as a fact question for the jury, then the same standard should apply to determine when a potential claim should be known for purposes of scheduling for bankruptcy, giving rise to judicial estoppel for

failure to do so. Under OCGA § 9-3-72, a one-year statute of limitation after the discovery of a foreign body negligently left in the plaintiff's body was created. The General Assembly recognized the "mischief needing correction," which was "the injustice of a claim being barred before its existence became known to the injured party." *Spivey v. Whiddon*, supra. Thus, the statute of limitation as to negligently leaving a foreign body in the plaintiff does not begin to run until two years after the negligence occurred or in the exercise of ordinary care the plaintiff discovered or should have discovered the object causes the statute to begin to run, whichever is later. Id. at 504. See also *Abend v. Klaudt*, 243 Ga. App. 271, 272-273 (1) (531 SE2d 722) (2000). Whether the plaintiff exercised ordinary care to discover the foreign body is a mixed question of law and fact for a jury. Id. at 273. Thus, the General Assembly created a public policy that a right of action cannot be lost without knowledge of such right. Id. Until the discovery of a foreign body in a plaintiff, even the statute of repose does not commence to run. Id. at 275-276 (2).

However, the discovery rule as to when a plaintiff should realize that they have a potential cause of action against someone for injury, causing the statute of limitation to begin to run, should have equal application to the doctrine of judicial estoppel, i.e., until the plaintiff is aware of or reasonably should be aware of a potential claim, because it is patently unfair to create an absolute bar to liability for lack of discovery of the potential claim without reaching the merits. There should be no duty to schedule the claim on the bankruptcy petition until the cause of action has been discovered as a potential claim. To allow judicial estoppel for failure to schedule a potential claim in bankruptcy prior to the claim having been discovered is to perpetuate an injustice as grave as the General Assembly sought to correct as a matter of public policy through the discovery rule.

"The bankruptcy schedule[ ] clearly required disclosure of the present claims, specifically requiring disclosure of all contingent and unliquidated claims of any nature including . . . counterclaims of the debtor and rights to setoff claims." (Punctuation omitted.) *Byrd v. JRC Towne Lake*, 225 Ga. App. 506, 507-508 (484 SE2d 309) (1997) (physical precedent only). This holding points out definite claims that are both known and vested; these are not theoretical possibilities as claims. Id. If Georgia courts impose the federal doctrine of judicial estoppel, then such imposition must be done in a manner compatible with Georgia public policies.

In this case, the plaintiff did not know that there existed a potential malpractice claim until after her discharge in bankruptcy when in October 1997 she learned that there was a catheter tip in her spine. That the plaintiff was earlier aware of the presence of a foreign body in her spine is not determinative of her knowledge of a potential

claim. A bankrupt cannot disclose and schedule a claim of which the bankrupt, as here, is unaware. See *Southmark Corp. v. Trotter, Smith & Jacobs*, supra at 455-456. The case law in Georgia depends upon the knowledge and appreciation of the potential cause of action by the plaintiff-bankrupt and the intentional decision not to schedule such potential claim to gain an unfair advantage for the doctrine of judicial estoppel to apply.[13] In this case, there exists a material issue of fact regarding plaintiff's knowledge of a potential claim prior to and during the pendency of the bankruptcy action for jury determination along with the defense of the statute of limitation. The trial court in exercising its sound discretion to reconsider the grant of summary judgment should have considered these factors raised by the facts and circumstances of this case, as well as evidence of efforts to amend the bankruptcy petition.

(c) Plaintiff contends that the trial court abused its discretion in failing to set aside the grant of the motion for summary judgment to consider evidence that plaintiff had sought to set aside the discharge in bankruptcy and to reopen the action so that she could amend the petition to schedule the malpractice claim. The trial court abused its discretion in not setting aside its order for the foregoing reasons, as well as in not allowing the plaintiff to produce evidence that the bankruptcy was being reopened and the claim properly scheduled; such action compels the plaintiff to do what they should have done for the benefit of creditors, eliminating the basis for judicial estoppel from taking inconsistent positions in different courts and does not permit the defendant to hide from liability on the merits for any medical malpractice based on some theoretical misuse of the court systems that is readily correctable without creating an injustice equally as grave. If the affront to justice through inconsistent positions in different courts can be corrected at any time, then the trial court to assure that justice is not denied anyone — plaintiff, defendant, or bankruptcy creditors — should permit such correction of the bankruptcy petition to occur to protect the integrity of the entire judicial

---

[13] *Southmark Corp. v. Trotter, Smith & Jacobs*, supra at 455-456 (awareness of legal malpractice claims prior to bankruptcy); see also *Harper v. GMAC Mtg. Corp.*, 245 Ga. App. 729, 731 (1) (538 SE2d 816) (2000) (pending action listed on bankruptcy schedule as an action for injunction and declaratory relief but made no mention of damages); *Smalls v. Walker*, 243 Ga. App. 453, 456-457 (2) (532 SE2d 420) (2000) (intentional failure to schedule personal injury claims arising prior to bankruptcy); *Reagan v. Lynch*, 241 Ga. App. 642, 643 (524 SE2d 510) (1999) (breach of contract arising prior to bankruptcy not scheduled); *Wolfork v. Tackett*, 241 Ga. App. 633 (526 SE2d 436) (1999) (whole court) (When a tort claim arises after a Chapter 13 filing, there is a duty to amend and file, which was not done.); *Byrd v. JRC Towne Lake*, supra at 506 (aware of the injuries from a car collision prior to filing for Chapter 13 but intentionally omitted the claim); *Hyre v. Denise*, 214 Ga. App. 552, 556 (9) (449 SE2d 120) (1994) (intentional failure to schedule potential pre-bankruptcy tort claims).

system. "Let justice prevail or the heavens fall."[14]

The defense of judicial estoppel is not designed to protect the litigant from their own liability on the merits, but to protect the integrity of the judiciary from injustice from intentional manipulation by allowing a plaintiff to take self-contradictory and inconsistent positions in one court in order to obtain an unfair advantage in another forum provided for suitors seeking justice. See *Southmark Corp. v. Trotter, Smith & Jacobs*, supra at 455; *Johnson v. Trust Co. Bank*, 223 Ga. App. 650, 651 (478 SE2d 629) (1996). Therefore, the ends of justice are always served by allowing the bankruptcy action to be amended or reopened to schedule a potential claim as an asset of the bankruptcy estate rather than applying the doctrine of judicial estoppel blindly as a bar to liability without an adjudication on the merits. See *Johnson v. Trust Co. Bank*, supra; see also *Jowers v. Arthur*, 245 Ga. App. 68 (537 SE2d 200) (2000). Such claim as an asset, unless abandoned by the bankruptcy court to the plaintiff, would inure to the benefit of plaintiff's creditors, and a trustee in bankruptcy would be substituted for the plaintiff in this action; therefore, innocent creditors would wrongfully suffer from blindly applied judicial estoppel in the name of justice. See *Jowers v. Arthur*, supra at 70; *United Technologies Corp. v. Gaines*, 225 Ga. App. 191, 192 (483 SE2d 357) (1997).

(d) Further, under Georgia law a personal injury claim as a chose in action cannot be assigned to anyone else; however, our courts have held that federal bankruptcy law preempts state public policy vesting such action in the trustee in bankruptcy. OCGA § 44-12-24; *Spoon v. Johnson*, 247 Ga. App. 754 (545 SE2d 328) (2001); *Denis v. Delta Air Lines*, 248 Ga. App. 377 (546 SE2d 805) (2001). When a bankruptcy is filed, the trustee in bankruptcy becomes the real party in interest, but Georgia public policy prohibits the trustee from assigning to the plaintiff their own personal injury action. *United Technologies Corp. v. Gaines*, supra. However, the trustee can abandon under federal bankruptcy law the personal injury claim to the plaintiff. *Denis v. Delta Air Lines*, supra at 380. Thus, in granting summary judgment to the plaintiff's claim on the basis of judicial estoppel, we create a res judicata issue as to the trustee's derivative claim against the tortfeasor granting the tortfeasor immunity to liability when this doctrine is to prevent injustice. The creditors in bankruptcy, whom we claim to seek to protect, and the plaintiff lose and the defendant wins. Judicial estoppel should not be a defense in bar but a defense in abatement, causing the action to be dismissed

---

[14] Rough translation of the Latin motto in the courtroom of the Supreme Court of Georgia.

without prejudice and refiled after it has been scheduled in bankruptcy court with the trustee as the real party in interest or the claim abandoned.

Thus, judicial estoppel has not been applied when the plaintiff opens and amends the bankruptcy petition after discharge to schedule the tort claim.[15] When the bankruptcy petition has been amended to set forth the tort claim, such bankruptcy petition and the tort complaint no longer are inconsistent so that the doctrine of judicial estoppel no longer has applicability, even if the plaintiff was forced to do what was right through judicial action. See *Jowers v. Arthur*, supra at 70; *Johnson v. Trust Co. Bank*, supra at 652.

Further, as a matter of sound public policy a physician, as a professional, should not escape professional liability for medical malpractice except as provided within the defenses normally available under malpractice jurisprudence, because each such finding of liability for professional negligence protects the public from failure to adhere to the ordinary standard of care by physicians in general.[16]

DECIDED OCTOBER 5, 2001 — 

*Hicks, Massey & Gardner, Frederick V. Massey, Robert M. Gardner, Jr.*, for appellant.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Johnathan T. Krawcheck*, for appellee.

---

[15] *McBride v. Brown*, 246 Ga. App. 149 (538 SE2d 863) (2000); *Jowers v. Arthur*, supra; *Smalls v. Walker*, supra at 456 (2); *Wolfork v. Tackett*, supra at 634 (whole court); *Clark v. Perino*, 235 Ga. App. 444, 446 (1) (509 SE2d 707) (1998); *Johnson v. Trust Co. Bank*, supra at 651-652.

[16] *Keenan v. Plouffe*, 267 Ga. 791, 793-794 (2) (482 SE2d 253) (1997); *Davis v. Stover*, 258 Ga. 156 (366 SE2d 670) (1988).