308 Ga. 577
FINAL COPY

S20Y0754. IN THE MATTER OF D. DUSTON TAPLEY, JR.

PER CURIAM.

This disciplinary matter is before the Court pursuant to the Report and Recommendation issued by a special master who was appointed following the filing of a Formal Complaint, in which the State Bar asserted that respondent D. Duston Tapley, Jr. (State Bar No. 697875), who has been a member of the Bar since 1977, had violated a variety of the Georgia Rules of Professional Conduct and lacked the mental competence to continue to practice law. See Bar Rule 4-104 ("[C]ognitive impairment . . . , to the extent of impairing competency as a lawyer, shall constitute grounds for removing a lawyer from the practice of law."). After the Formal Complaint was personally served on Tapley, he answered, and the State Bar moved for partial summary judgment as to the issue of incompetence under Bar Rule 4-104 and as to Tapley's violations — essentially based on his alleged incompetence — of Rules 1.1 (competent representation)

and 1.3 (reasonable diligence) of the Georgia Rules of Professional Conduct. The special master considered the documents and affidavits filed in support of the State Bar's motion for partial summary judgment and granted that motion, finding in essence that Tapley's cognitive impairment warranted removing him from the practice of law. But Tapley submitted evidence creating a genuine issue of material fact that the special master erroneously disregarded, so we reject the special master's recommendation and remand for an evidentiary hearing on Tapley's competence and certain alleged violations of the Rules of Professional Conduct.

We review the grant or denial of a motion for summary judgment de novo, and "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

So viewed, the evidence shows that in February 2018, a Richmond County court held a hearing on Tapley's motion to withdraw as counsel for a criminal defendant after the jury had been

selected but before it had been sworn. At the hearing, Tapley represented to the court that he was in his 80s and that he had been practicing law for decades, but that he was no longer "physically and mentally able to adequately represent his clients." He stated that he was "just not up to the pressure" of doing the things required to try a case; that "sometime back" he had begun to realize that he could no longer do the things he could do when he was 50 years old; that he was beginning to overlook things that he later realized might be able to help his clients; that he had trouble with dizziness; that, during jury selection, it "came home to [him]" that he could no longer hear as well as he used to; and that he was having increasing issues with stamina.

In response to the court's inquiry about Tapley's other cases, Tapley indicated that he was no longer taking felony cases; that he was focusing on misdemeanor cases; and that he was avoiding more complicated cases. But, when confronted, he admitted that he still represented defendants in felony cases in other courts. Indeed, Tapley advised the court that he planned to appear two days later

at a hearing scheduled in a felony case in another county because it was a "nothing case," and he felt compelled to continue that representation because that client was a family friend. Similarly, Tapley acknowledged that he still represented a defendant accused of murder in another county. He initially stated that he was "going to have to try" that case if it came to it, but then conceded that he "may not handle it" and that he had told his client that he did not believe he should handle the case. The court explained to Tapley that, if what he was saying about his lack of capacity was true, then he had a professional responsibility to withdraw from representation of all of his clients. Tapley suggested that he understood that fact.

After learning of the February 2018 hearing in Richmond County, chief judges of the Middle Judicial Circuit and the Oconee Judicial Circuit convened meetings with Tapley to discuss his competency and continued representation of clients in their circuits. After those meetings, each chief judge entered an order acknowledging Tapley's agreement that he would withdraw from

ongoing criminal cases and refrain from taking new cases in their judicial circuits.[1] Tapley did not timely appeal either order, but in March 2018 he obtained an evaluation, in which a psychologist, Dr. Donald Meck, appeared to conclude that Tapley's cognitive ability was, for the most part, within the "normal" range for a person his age. Tapley then moved to vacate the chief judges' orders and to recuse the chief judges. When his motions were denied, he appealed, but his appeals were dismissed as procedurally improper.

The State Bar initiated disciplinary proceedings against Tapley. Although Tapley filed sworn statements that he had not violated Rules 1.1 and 1.3 and that he does not have cognitive issues affecting his ability to practice law, the special master found that those statements, even when construed in the light most favorable to him, failed to create a genuine issue of material fact as to his alleged violations of Rules 1.1 and 1.3, particularly where he had

---

[1] Despite his agreement and the entry of these orders, Tapley continued to tell clients that he could represent them in court, requiring one chief judge to convene a status conference in a criminal case to make clear to the defendant that, despite Tapley's representations to the contrary, Tapley could no longer represent him and that he needed to obtain new counsel.

made solemn, in-court representations as to his lack of competency; where his later sworn statements directly contradicted his previous in judicio statements; and where he had not offered any reasonable explanation for the change in his testimony.

With regard to the allegation that Tapley was not competent to practice law under Bar Rule 4-104, the special master considered Dr. Meck's deposition testimony regarding his March 2018 report as to Tapley's cognitive abilities. In his evaluation and deposition, Dr. Meck stated that, although Tapley has experienced "age appropriate cognitive decline exacerbated by auditory deficits," his "general cognitive ability . . . is in the average range." Dr. Meck found no evidence of psychological or mental health issues. Dr. Meck made clear, however, that he evaluated Tapley's ability to function generally, rather than his ability to practice law.

After noting that Dr. Meck had never been qualified as an expert on the issue of whether a person had the capacity or competency to practice law, the special master concluded that, because Dr. Meck had not addressed the relationship between the

"cognitive impairment" that Tapley admitted in three different fora and his capacity or competency to practice law, Tapley had not presented any competent evidence to rebut his admissions about his lack of capacity and the statements of multiple judges who had expressed concerns about Tapley's cognitive decline. Thus, the special master found that the State Bar had carried its burden of showing by clear and convincing evidence that Tapley lacked the mental capacity to continue the practice of law such that he should be removed under Bar Rule 4-104. As neither party requested review by the State Disciplinary Review Board ("Review Board"), see Bar Rule 4-214 (c), the report and recommendation was filed in this Court pursuant to Bar Rule 4-214 (c).

Tapley filed a response to the special master's report, asserting among other things that there was insufficient evidence to support it.[2] Tapley is partly correct inasmuch as the special master's grant of summary judgment was not supported by the evidence.

---

[2] The Bar argues that we should disregard Tapley's response because he waived his right to file exceptions to the report and recommendation by failing

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). To prevail on its motion for summary judgment, the State Bar had to demonstrate that there is no genuine issue of material fact. See *Montgomery v. Barrow*, 286 Ga. 896, 898 (692 SE2d 351) (2010). Tapley, as the party opposing summary judgment, was not required to produce evidence demanding judgment for him, but was "only required to present evidence that raises a genuine issue of material fact." *Johnson v. Omondi*, 294 Ga. 74, 75 (751 SE2d 288) (2013) (citation omitted).  By presenting the testimony of Dr. Meck, Tapley has done so.

---

to request review by the Review Board under Bar Rule 4-214 (c). But the Bar's argument ignores Bar Rule 4-218, which specifically states that "[a]fter the Special Master's report and any report of the . . . Review Board are filed with the Supreme Court of Georgia, the respondent and the . . . Bar . . . may file with the Court any written exceptions, supported by written argument, either may have to the reports."

Citing *In the Matter of Moore*, 305 Ga. 419, 421 (825 SE2d 225) (2019), the special master found that Dr. Meck's evaluation of Tapley was not relevant because he did not assess whether Tapley was mentally competent to practice law. In *Moore*, the attorney had been temporarily suspended for violating several rules (without reference to Bar Rule 4-104), and we conditioned his reinstatement on "providing a detailed, written evaluation by a licensed psychologist or psychiatrist certifying that [he] was mentally competent to practice law[.]" Id. at 420. Moore underwent a psychological evaluation, but the evaluation did not address his competency to practice law, so we concluded that he did not meet his burden of providing sufficient evidence to prove that satisfied the conditions of reinstatement. Id. at 419-421.

But our holding in *Moore* was limited to Moore's failure to satisfy the specific condition we had imposed that Moore provide a psychological evaluation certifying that he was competent to practice law. Id. In concluding that Moore did not meet his burden, we did *not* hold that a psychologist's generalized evaluation of an

attorney is relevant to the issue of competence only if the psychologist assesses whether that attorney has the capacity or competency to practice law. And *Moore* should not be read in this manner, because it would confuse two distinct evidentiary concepts. As we have said before,

> [r]elevance is a binary concept — evidence is relevant or it is not — but probative value is relative. Evidence is relevant if it has "*any tendency*" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered.

*Jones v. State*, 301 Ga. 544, 546-547 (1) (802 SE2d 234) (2017) (citations and punctuation omitted; emphasis in original).

Here, Dr. Meck's evaluation of Tapley was certainly relevant as to Tapley's competency to practice law. Dr. Meck's evaluation, while potentially less probative than a specific evaluation of Moore's competency to practice law would be, was enough to create a genuine

issue of material fact sufficient to defeat the State Bar's motion for summary judgment as to Tapley's competency. See *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015) ("'[I]f a defendant . . . moves for summary judgment and points to the favorable testimony of a dozen winners of the Nobel Prize for Medicine . . . , but the plaintiff responds with the admissible testimony of a barely qualified medical expert . . . , the trial court must assume — as unlikely as it may be — that the jury will believe the plaintiff's expert and disbelieve the expert array offered by the defendant.'" (citation omitted)). Therefore, we reject the special master's recommendation as to Tapley's competency. And we also reject the special master's recommendation as to the violations of Rules 1.1 and 1.3, because the special master's findings were interrelated with the competency determination.[3] As a result, we reject the recommendation and remand for an evidentiary hearing on the alleged violations.

---

[3] There do appear to be considerable undisputed facts supporting other violations, but they are not before us because the special master made no ruling on them.

*Recommendation rejected and case remanded for an evidentiary hearing. All the Justices concur, except Ellington, J., disqualified.*

DECIDED APRIL 20, 2020.

Competency to practice law.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, James S. Lewis, Assistant General Counsel State Bar*, for State Bar of Georgia.