310 Ga. 289
FINAL COPY

S19G1619. FULTON COUNTY v. WARD-POAG.

PETERSON, Justice.

In this case, summary judgment was awarded to Fulton County on Sandra Ward-Poag's civil whistleblower claims on the ground of judicial estoppel. In particular, the superior court concluded that judicial estoppel barred Ward-Poag's claims because she took an inconsistent position regarding the nature of those claims when she failed to disclose her claims in her bankruptcy case, and then amended her bankruptcy petition to value her claims against the County as worth far less than alleged here. The Court of Appeals reversed the superior court's decision, concluding that Ward-Poag's amendment to her bankruptcy petition to list the claim in fact showed that she did not take an inconsistent position in the superior court. See *Ward-Poag v. Fulton County*, 351 Ga. App. 325, 331 (1) (830 SE2d 799) (2019). In making that determination, the Court of Appeals relied on its case law seemingly creating a bright-

line rule that a party takes consistent positions, and thus lacks an intent to deceive the court system, when the party successfully amends a bankruptcy schedule to include a previously undisclosed asset. We disapprove the Court of Appeals's analysis and its previous case law to the extent it created that bright-line rule, because such rules have no place in the application of judicial estoppel. We nevertheless affirm the Court of Appeals's ultimate conclusion that the superior court abused its discretion in applying the doctrine at this procedural stage because there are genuine issues of material fact that preclude summary judgment to Fulton County.

1.    *Factual and Procedural History.*

Viewed in the light most favorable to Ward-Poag as the non-moving party for purposes of summary judgment in the superior court, the relevant facts of record and the procedural history of this case are as follows. Fulton County hired Ward-Poag as the entertainment manager for the Wolf Creek Amphitheater in 2012. In May 2013, Ward-Poag filed a voluntary petition for Chapter 13

bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. In March 2014, the bankruptcy court confirmed Ward-Poag's Chapter 13 plan, which required Ward-Poag to fully compensate her creditors by making payments to the bankruptcy trustee until March 2019.

While her bankruptcy petition was pending, in October 2016, Ward-Poag filed a whistleblower lawsuit against the County in Fulton County Superior Court. In her verified complaint, Ward-Poag alleged that from September 2015 to August 2016, a Fulton County commissioner attempted to use the amphitheater for his own private gain, which included the commissioner making repeated demands to reserve the amphitheater for his own concerts. Ward-Poag rejected the commissioner's requests, and as a result, she alleged, she was demoted and faced other forms of retaliation by the commissioner. In her amended complaint, filed in December 2016, Ward-Poag prayed for $3 million in damages and also asked for attorneys' fees and pre judgment interest.

On September 5, 2017, the County filed a motion for summary judgment in the whistleblower case, arguing that judicial estoppel barred Ward-Poag's claims because she failed to disclose the lawsuit as an asset in her pending bankruptcy proceedings. See 11 USC § 1306 (a) (1) ("Property of the estate" for purposes of Chapter 13 bankruptcy includes property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a . . . [C]hapter 7, or 11, or 12 [bankruptcy case]."). In the County's statement of undisputed material facts in support of its motion for summary judgment, the County specifically asserted that Ward-Poag was required to amend her bankruptcy schedules to include her pending civil action as an asset and failed to do so.

On October 2, 2017, less than a month after the County filed its motion for summary judgment, Ward-Poag amended her bankruptcy petition to disclose the cause of action against the County as an asset. In her amended petition, she swore under penalty of perjury that the asset was worth $1. Three days later, Ward-Poag filed a response to the County's motion for summary

judgment and its statement of undisputed material facts, stating that she "had no intention to deceive the bankruptcy [court] as to the existence of [her pending civil case], [because she] was unaware of her obligation to amend her petition to disclose [the civil] case to the bankruptcy court."  She also stated that, once she was "made aware of her obligation to do so, [she] immediately amended her bankruptcy petition accordingly." Ward-Poag submitted an affidavit in support of her statements.

On October 17, 2017, the superior court held a hearing for argument on the County's motion for summary judgment. At the hearing, Ward-Poag argued that judicial estoppel could not apply because there was "no evidence of her intent to deceive the bankruptcy court." However, at the end of the hearing, the superior court announced from the bench that it had examined "the intent that [Ward-Poag] had in announcing [to the bankruptcy court] that her [superior court] case was believed to be [valued] in the amount of $1," and found that such a proclamation made "a mockery of [the superior] court and a mockery of the bankruptcy court," as Ward-

5

Poag was "asking for considerably more than $1" in her lawsuit. The superior court concluded that Ward-Poag had acted "with an intent to deceive creditors," and determined that Ward-Poag was "judicially estopped from proceeding with [the] case as a result of [her inconsistent] filing[s]."

Three days after the superior court's oral ruling, but before the court reduced it to writing, Ward-Poag filed a motion for reconsideration. She also submitted an affidavit in which she again claimed that she was initially unaware of her obligation to disclose her lawsuit to the bankruptcy court, and her bankruptcy counsel submitted an affidavit in which he claimed that it was a "normal and customary practice" to represent to a bankruptcy court that a pending civil lawsuit was worth $1.

After a December 19, 2017 hearing at which it considered pending motions, including Ward-Poag's motion for reconsideration, the superior court entered a written order on May 22, 2018, granting the County's motion for summary judgment and implicitly denying Ward-Poag's motion for reconsideration. In its order, the superior

court noted that Ward-Poag was a law school graduate[1] who was represented by counsel in her bankruptcy action. In its written order, the superior court determined that Ward-Poag's actions — amending her bankruptcy petition to list the lawsuit against the County only after the County raised the issue and, in amending the petition, undervaluing her claim — demonstrated an intent to deceive and made a mockery of the superior and bankruptcy courts.

The Court of Appeals reversed the superior court's decision, concluding that Ward-Poag's positions in the bankruptcy court and the superior court were not inconsistent and did not threaten judicial integrity given that her amended bankruptcy schedule disclosed her claim against the County. See *Ward-Poag*, 351 Ga. App. at 330-331 (1). We granted the County's petition for a writ of certiorari to address whether the superior court abused its discretion in applying judicial estoppel to bar Ward-Poag's claims.

    2.    *Analysis.*

---

[1] It was undisputed that Ward-Poag graduated from law school but did not become licensed to practice law.

The County contends that the Court of Appeals erred in reversing the superior court's decision to apply judicial estoppel to bar Ward-Poag's civil claims against the County. We disagree.

(a) *Standard of review.*

Judicial estoppel is an equitable doctrine that can be invoked by a court at its discretion, and we review a trial court's application of that doctrine for an abuse of discretion. See, e.g., *Klardie v. Klardie*, 287 Ga. 499, 501-502 (2) (697 SE2d 207) (2010); *Goddard v. City of Albany*, 285 Ga. 882, 885 (2) (684 SE2d 635) (2009). Whenever a trial court exercises its discretion, it must do so in conformity with governing legal principles. See *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014). If a trial court significantly misapplies the law or clearly errs in a material factual finding, we may affirm the trial court's exercise of discretion only when we can conclude that, "'had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment.'" Id. (quoting *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011)).

Because the superior court was deciding the judicial estoppel issue in the context of a motion for summary judgment, the court was required to follow the well-established principles governing such motions. A trial court can grant summary judgment to a moving party only if there are no genuine issues of material fact and the undisputed evidence warrants judgment as a matter of law. See OCGA § 9-11-56 (c). In reviewing the evidence, a court must construe all facts and draw all inferences in favor of the non-movant. See *Messex v. Lynch*, 255 Ga. 208, 210 (1) (336 SE2d 755) (1985) (at summary judgment, "[t]he party opposing the motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists[,] and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence" (citation and punctuation omitted)). We must view the evidence in the same manner on appeal. See *In the Matter of Tapley*, 308 Ga. 577, 577 (842 SE2d 36) (2020) (when reviewing a motion for summary judgment, "we must view the evidence, and all reasonable

inferences drawn therefrom, in the light most favorable to the nonmovant" (citation and punctuation omitted)).

(b) *The application of judicial estoppel depends on the factual circumstances of the case.*

> The federal doctrine of judicial estoppel precludes a party from asserting a position in one judicial proceeding after having successfully asserted a contrary position in a prior proceeding. . . . The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.

*Period Homes v. Wallick*, 275 Ga. 486, 488 (2) (569 SE2d 502) (2002).[2] The doctrine "is commonly applied to preclude a [Chapter 13] bankruptcy debtor from pursuing a damages claim that [she] failed to include in [her] assets in the bankruptcy petition." *Wolfork v. Tackett*, 273 Ga. 328, 328 (540 SE2d 611) (2001), disapproved on

---

[2] We have said in *Period Homes* and other cases that Georgia courts apply the "federal" doctrine of judicial estoppel. It is unclear (1) if we do so because the Supremacy Clause requires us to, (2) if we do so as a matter of judicial comity, or (3) whether we simply consider the federal case law persuasive. We have not identified any decision of ours or of federal or other state courts that sheds much light on the question. In any event, neither party suggests that we reconsider our course, so we will continue to look to the federal decisions in this case.

other grounds in *Period Homes*, 275 Ga. at 488 (1).[3] This is so

because

> [a] failure to reveal assets [in a Chapter 13 bankruptcy petition], including unliquidated tort claims, operates as a denial that such assets exist, deprives the bankruptcy court of the full information it needs to evaluate and rule upon [the] bankruptcy petition, and deprives creditors of resources that may satisfy unpaid obligations. The application of the doctrine [of judicial estoppel] preserves the integrity of the judicial forum by not permitting a debtor to take inconsistent positions to manipulate the system.

Id. at 328-329 (footnote omitted); see also, e.g., *Johnson v. Trust Co. Bank*, 223 Ga. App. 650, 651 (478 SE2d 629) (1996) ("The doctrine

---

[3] In *Period Homes*, we noted that

> [u]nlike [in] a bankruptcy proceeding under Chapter 13, there are only limited circumstances in which a Chapter 7 or 11 debtor must amend his schedule of assets to reflect property acquired after commencement of the case. See 11 USC § 541 (a) (7). This is in stark contrast to the amendment requirement that a Chapter 13 debtor is under, 11 USC § 1306 (a), which directs that all property acquired after the commencement of the bankruptcy proceeding be included in an amended schedule of assets. There is no analogous provision for bankruptcies proceeding under Chapters 7 or 11. Accordingly, a debtor under Chapters 7 or 11 is under no *statutory* duty to amend its schedule of assets.

(Emphasis in original.) Id. at 487-488 (1). Thus, we disapproved *Wolfork* "[t]o the extent that this distinction [between the differing amendment requirements in different forms of bankruptcies] conflict[ed] with our statement in *Wolfork* . . . that a Chapter 7 or 11 debtor is required to amend his schedule of assets." Id. at 488 (1).

[of judicial estoppel] is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings." (citation and punctuation omitted)).

The United States Supreme Court has identified a general test to guide the application of judicial estoppel:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[,]" . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750 (II) (121 SCt 1808, 149 LE2d 968) (2001) (citations omitted). These three factors generally inform a decision about whether to apply the doctrine in a particular case. See id. at 750 (II); see also *IBF Participating Income Fund v. Dillard-Winecoff*, 275 Ga. 765, 766 (573 SE2d 58) (2002) (identifying

12

the three factors from *New Hampshire* as being "pertinent to the decision whether to apply the doctrine [of judicial estoppel] in a particular case" (citations and punctuation omitted)).

In establishing those three factors, the United States Supreme Court did not intend to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel" because "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750-751 (II) (citation and punctuation omitted). Instead, the Court emphasized that "[a]dditional considerations may inform the doctrine's application in specific factual contexts," remembering that the purpose of judicial estoppel is to "protect the integrity of the judicial process." Id. at 749, 751 (II) (citation and punctuation omitted).

The circumstances of this case are unlike those in *New Hampshire*, and so not all of the *New Hampshire* factors are applicable. *New Hampshire* involved a dispute between Maine and

13

New Hampshire regarding a consent order entered into by the states in a previous lawsuit, and Maine attempted to apply judicial estoppel against New Hampshire for taking inconsistent positions in the two lawsuits. Id. at 745. Because Maine and New Hampshire were parties to both lawsuits, the third *New Hampshire* factor — whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped — was well suited to that case.

But here, the third *New Hampshire* factor is ill suited. The party seeking to apply judicial estoppel, the County, is *not* a party to the bankruptcy proceedings in which Ward-Poag has allegedly taken an inconsistent position. Therefore, any inconsistent position taken by Ward-Poag would not give her an unfair advantage *over the County*. Instead, any potential disadvantage would be to Ward-Poag's creditors, who are not involved in the current litigation. See, e.g., *Harper v. GMAC Mtg. Corp.*, 245 Ga. App. 729, 733 (1) (538 SE2d 816) (2000) ("[A] creditor would likely rethink its consent or objections to the proposed long-term [bankruptcy] payout plan were

14

it aware of additional assets. Similarly, a court would be less likely to force creditors to accept the long-term payout if it understood not all assets had been listed.").

Recognizing that the third *New Hampshire* factor is inapplicable where the party seeking to apply judicial estoppel was not a party to the other court proceedings, and because the *New Hampshire* factors were not intended to be a one-size-fits-all approach, the Eleventh Circuit adopted a test to guide the application of judicial estoppel in a factual context similar to the one presented here. Specifically, when an adverse party fails to disclose a civil lawsuit as an asset in Chapter 13 bankruptcy filings, the Eleventh Circuit employs "a two-part test to guide district courts in applying judicial estoppel: whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were 'calculated to make a mockery of the judicial system.'" *Slater v. United States Steel Corp.*, 871 F3d 1174, 1181 (III) (A) (11th Cir. 2017) (en banc) (citation omitted). With respect to the second part of the test:

[T]o determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case. When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

Id. at 1185 (III) (C); see also *Smith v. Haynes & Haynes, P.C.*, 940 F3d 635, 644 (III) (A) (1) (11th Cir. 2019) (noting that *Slater* overruled prior circuit precedent "that permitted a district court to infer intent to misuse the courts from nondisclosure alone," and noting that "[w]hether a plaintiff intended to mislead the court is separate from and not answered by whether" the plaintiff took an inconsistent position (citations and punctuation omitted)).[4] Because

---

[4] This brought the Eleventh Circuit in line with "at least three other circuits, which have recognized that whether a plaintiff intended to make a mockery of the judicial system requires consideration of more than just whether the plaintiff failed to disclose a claim." *Slater*, 871 F3d at 1189 (III)

the *New Hampshire* factors do not present an exhaustive list to be considered in every circumstance, and because *Slater* was tailored to address situations like the current one where a party to a civil action was not a party to the bankruptcy proceedings in which an allegedly inconsistent position was taken, we conclude that the *Slater* test should be followed in cases such as the one here.

(c) *The superior court's grant of summary judgment must be reversed for misapplying the summary judgment standard.*

Using the *Slater* factors as a starting point, we conclude that the Court of Appeals erred in its analysis. The Court of Appeals concluded that Ward-Poag's positions in the bankruptcy court and the superior court were not inconsistent and did not threaten judicial integrity because she amended her bankruptcy schedule to

_____

(C). See id. at 1189 (III) (C) n.17 (citing *Spaine v. Community Contacts, Inc.*, 756 F3d 542, 548 (III) (7th Cir. 2014); *Ah Quin v. County of Kauai Dept. of Transp.*, 733 F3d 267, 276 (9th Cir. 2013); and *Eubanks v. CBSK Financial Group, Inc.*, 385 F3d 894, 899 (II) (6th Cir. 2004)); see also *Martineau v. Wier*, 934 F3d 385, 393-394 (II) (B) (1) (4th Cir. 2019) (overruling district court's holding that debtor intentionally misled the court because the court so held "only by relying on a presumption of bad faith" based upon the debtor's failure "to disclose a legal claim in bankruptcy proceedings," and the "judicial estoppel inquiry does not lend itself to this kind of blanket presumption").

include her claim against the County. See *Ward-Poag*, 351 Ga. App. at 330-331 (1). In reaching that conclusion, the Court of Appeals relied on its own precedent seemingly creating a bright-line rule that

> where a plaintiff, who initially fails to list a claim in her bankruptcy petition, successfully amends her asset schedules to include that claim, *it cannot be said as a matter of law* that the plaintiff intentionally attempted to manipulate and deceive the court system, or that she was attempting to make a mockery of the system through inconsistent pleading.

Id. at 330 (1) (citation and punctuation omitted; emphasis in original). As discussed above, the doctrine of equitable estoppel is not one of bright-line rules. It involves a consideration of various factors depending on the circumstances of a case. A key criterion in applying judicial estoppel, as *Slater* discusses, is whether an inconsistent position was *calculated* to make a mockery of the judicial system.

Contrary to the Court of Appeals's position, it is not *always* the case that an amendment to a bankruptcy petition to reveal the existence of a previously undisclosed cause of action will

18

automatically make a debtor's positions consistent. It is generally true that

> when a plaintiff has successfully amended his or her bankruptcy petition to include any claim against the [civil] defendant as a potential asset[, judicial estoppel is inapplicable to bar the claim] because then it cannot be said that the position in the trial court is inconsistent with the position asserted by the plaintiff in the bankruptcy proceeding.

*Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006). Implicit in this observation is that the bankruptcy amendment is consistent with the claim asserted in the trial court. Simply disclosing a claim does not always mean a party has taken consistent positions. See *Dugger v. Smith & Nephew, Inc.*, 2013 U.S. Dist. LEXIS 191729, at *5 (II) (B) (N.D. Ga. March 20, 2013) (concluding in the context of judicial estoppel that plaintiffs took inconsistent positions by representing under oath in bankruptcy court that their pending civil case was valued at $30,690 while representing in their civil complaint that they were entitled to damages that were "certainly greater than" $75,000 (punctuation omitted)).[5]

---

[5] *Dugger* followed the Eleventh Circuit's two-part test that was

Although the cases cited by the Court of Appeals may be factually distinguishable, they cited a general proposition often repeated, and one that has no place in judicial estoppel. We disapprove cases that can be read to support the proposition that *any* amendment, no matter how inaccurate, will automatically make a debtor's positions consistent for purposes of judicial estoppel. See *Kamara v. Henson*, 340 Ga. App. 111, 112 (1) (796 SE2d 496) (2017); *Nat. Bldg. Maintenance Specialists, Inc. v. Hayes*, 288 Ga. App. 25, 27 (653 SE2d 772) (2007); *Rowan v. George H. Green Oil*, 257 Ga. App. 774, 775-776 (572 SE2d 338) (2002); *Weiser v. Wert*, 251 Ga. App. 566, 568 (554 SE2d 762) (2001); *Jowers v. Arthur*, 245 Ga. App. 68, 70 (537 SE2d 200) (2000); *Clark v. Perino*, 235 Ga. App. 444, 446

reaffirmed in *Slater*: whether the party took an inconsistent position under oath in a separate proceeding and whether the party intended to make a mockery of the judicial system through the inconsistent positions. See *Slater*, 871 F3d at 1181-1182 (III) (A) (explaining that the Court was adhering to its two-part test); *Dugger*, 2013 U.S. Dist. LEXIS 191729, at *4-5 (II) (B) (setting out two-part test). Although *Slater* overruled case law relied on by *Dugger*, *Slater* focused only on the second prong. *Slater*, 871 F3d at 1182 (III) (B) ("We focus today on the second part: how a court should determine whether a plaintiff intended [to] make a mockery of the judicial system."). Thus, *Slater*'s ruling did not affect *Dugger*'s conclusion that a party can take an inconsistent position based on the valuation of a claim.

(1) (509 SE2d 707) (1998); *Johnson*, 223 Ga. App. at 651-652. And we disapprove the Court of Appeals's conclusion here that a successful amendment to a bankruptcy schedule cannot be evidence of an intention to manipulate or deceive the court system.

But our rejection of the Court of Appeals's analysis does not mean that the superior court exercised its discretion properly in applying judicial estoppel. As noted above, the court was asked to apply judicial estoppel on a summary judgment motion, and it could not grant the motion if there were genuine issues of material fact. The evidence is not undisputed.

In an affidavit accompanying her opposition to the County's motion for summary judgment, Ward-Poag stated under penalty of perjury that she had no intention to deceive the bankruptcy court as to the existence of her case against the County, and that she was unaware of her obligation to amend her bankruptcy schedule to disclose her claims against the County.[6] The County argues that we

---

[6] In addition to this affidavit filed before the hearing on the motion for summary judgment, Ward-Poag filed another affidavit after the hearing in which she made similar declarations, but the superior court was not required

21

should ignore Ward-Poag's timely affidavit because her ignorance of the law and reliance on her bankruptcy attorney's representations is immaterial to a judicial estoppel analysis. In making this argument the County relies on pre-*Slater* cases, despite also arguing that we should apply the *Slater* test, which counsels that all circumstances and facts be considered in applying judicial estoppel, and that nondisclosure alone is insufficient to establish actual intent. See *Smith*, 940 F3d at 644 (III) (A) (1) (under pre-*Slater* cases, "it was not necessary for the proponent of application of the doctrine to show that the plaintiff had actual intent to deceive or manipulate"). Ward-Poag's statements, by themselves, created genuine issues of material fact as to whether she had an intention to deceive and manipulate the judicial system.

---

to consider this second affidavit. See *Bush v. Eichholz*, 352 Ga. App. 465, 477 (5) (833 SE2d 280) (2019) ("[A] trial court is not at all bound to consider evidence filed after a summary judgment hearing."); *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 338 (2) (b) (508 SE2d 750) (1998) (trial court has discretion to decide whether or not it will consider late-filed affidavits for purposes of summary judgment).

In ruling that she did, the superior court not only ignored Ward-Poag's evidence, it also construed the facts and drew inferences against Ward-Poag when it was required to do the exact opposite. None of the evidence the superior court cited could support its conclusion that Ward-Poag intended to deceive her creditors and make a mockery of the judicial system without a negative inference. First, the superior court cited Ward-Poag's failure to timely amend her bankruptcy claim and her valuation of her civil claim for $1 in her amendment as proof of intentional deception. But although Ward-Poag failed to timely amend and valued her claims inconsistently, no evidence *necessarily* indicates that she did so for the purpose of deceiving her creditors, particularly given her denial of such intent. Such an inference could not be drawn at the summary judgment stage, where the superior court could only draw inferences favorable to Ward-Poag.

Second, the superior court found that because Ward-Poag was a law school graduate and was represented by counsel, she was a "sophisticated party" who knew of her duty to timely amend her

bankruptcy schedule and value her claims consistently in the civil and bankruptcy proceedings. Again, the superior court could reach such a conclusion only by drawing an inference unfavorable to Ward-Poag. Just because Ward-Poag had attended law school and was represented by counsel did not necessarily mean that she knew her obligations in her bankruptcy case. The mere fact that an individual has a law degree does not support an inference that she understands federal bankruptcy law. See *Smith*, 940 F3d at 645 (III) (A) (1) (the fact that the plaintiff was a legal assistant at an employment law firm did not constitute evidence of her familiarity with Fair Labor Standards Act or Internal Revenue Service regulations). Also, the mere fact that she was represented by counsel does not establish as undisputed fact that her bankruptcy attorney communicated accurate information to her regarding her obligations. Id. at 646 (III) (A) (1) (mere fact of representation did not support conclusion that plaintiff knew of obligation to disclose claim: "[p]erhaps her

24

bankruptcy lawyer advised her of the obligation, but there is nothing in the record suggesting that").[7]

When viewed in the light most favorable to Ward-Poag, the undisputed facts do not warrant application of judicial estoppel because they do not show that Ward-Poag intended to deceive her creditors or the courts. Judicial estoppel "should not be applied when the inconsistent positions were the result of inadvertence or mistake." *Smith*, 940 F3d at 643 (III) (A) (citations and punctuation omitted). As *Slater* makes clear, the intent of a party to deceive is a key consideration (although not the sole consideration) in determining whether to apply judicial estoppel. But questions like intent are only rarely appropriate to decide at summary judgment. See, e.g., *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 243 (1) (590 SE2d 224) (2003) ("Except in plain and indisputable cases, scienter in actions based on fraud is an issue of fact for jury

---

[7] Ward-Poag's bankruptcy counsel stated in his late-filed affidavit that he updated Ward-Poag's bankruptcy petition and listed a "nominal value of $1.00" because it was a "normal and customary practice" since the true value of the civil action is unknown until there is some resolution to the case.

determination," not an issue "that can be resolved on motion for summary judgment." (citation and punctuation omitted)); *Quill v. Newberry*, 238 Ga. App. 184, 189 (1) (c) (518 SE2d 189) (1999) ("[S]cienter is 'peculiarly' a jury issue; it deals with the choice of what to believe regarding a subjective state of mind seldom capable of direct proof" and, therefore, generally "has no place in summary judgment, which is granted 'only where the evidence is plain, palpable and undisputable.'" (citation omitted)); see also *Ajaka v. BrooksAmerica Mtg. Corp.*, 453 F3d 1339, 1346 (11th Cir. 2006) (evidence created material issue of fact as to whether the debtor "had the motivation and intent to manipulate the judicial system under the circumstances presented").

This is not one of those rare cases where the evidence of intent is plain and undisputed. There are genuine issues of material fact as to whether Ward-Poag intended to deceive her creditors and make a mockery of the judicial system by any inconsistent position she may have taken. The superior court therefore erred in granting

summary judgment to the County on judicial estoppel grounds,[8] and we affirm the Court of Appeals's reversal of the superior court's ruling (albeit for very different reasons than the Court of Appeals gave).

(d) *If the superior court reconsiders judicial estoppel on remand under the proper evidentiary framework, the superior court should apply the Slater test but also weigh other considerations.*

Our decision today does not resolve the issue of judicial estoppel definitively; it merely means that the issue is inappropriate for summary judgment as the case presently stands. Given the disputed issue of intent, the court would need to hold an evidentiary

---

[8] The dissent's conclusion to the contrary ignores two fundamental precepts. First, the trial court was authorized to grant the County's motion for summary judgment only if there were no genuine issues of material fact when all inferences were drawn in Ward-Poag's favor. But the dissent — as did the trial court — focuses on evidence that may support inferences against Ward-Poag; whether those inferences are supportable is not the question, because such inferences may not be drawn at summary judgment. Second, in concluding that Ward-Poag intended to deceive her creditors and make a mockery of the judicial system, the dissent relies on case law predating *Slater*. Under pre-*Slater* cases, there was no requirement that a plaintiff have actual intent to deceive or manipulate the judicial system, because nondisclosure alone was sufficient to trigger application of judicial estoppel. See *Smith*, 940 F3d at 644 (III) (A) (1). *Slater* made clear that actual intent cannot be inferred from nondisclosure alone, and although a subsequent inadequate amendment might support an inference of actual intent to deceive depending on all the other circumstances, such an inference cannot be drawn at summary judgment.

hearing to consider the credibility of Ward-Poag and her bankruptcy counsel and resolve any conflicts in the evidence. See *Smith*, 940 F3d at 644-645 (III) (A) (1) (because the trial court applied judicial estoppel without the benefit of *Slater*, it "saw no need for an evidentiary hearing to gauge [the plaintiff's] credibility in person or to otherwise resolve disputes of fact"); *Lubke v. City of Arlington,* 473 F3d 571, 571 (5th Cir. 2006) (remanding for trial court to consider judicial estoppel and conduct evidentiary hearing if necessary); *Montrose Med. Group Participating Saving Plan v. Bulger*, 243 F3d 773, 780 (II) n.5 (3d Cir. 2001) (noting that, although a district court need not always conduct an evidentiary hearing before applying judicial estoppel, an evidentiary hearing is sometimes necessary if the determination regarding the plaintiff's intent involves a resolution of disputed facts); cf. *K/C Ice, LLC v. Connell,* 352 Ga. App. 376, 378 (1) (835 SE2d 11) (2019) ("In deciding a motion for summary judgment, neither the trial court nor [an appellate court] can consider the credibility of witnesses; and a finder of fact must resolve the question of credibility and the conflicts in the evidence

28

which it produces." (citing *Miller v. Douglas*, 235 Ga. 222, 223 (219 SE2d 144) (1975)).

And if the superior court does so, the court should bear in mind that the *Slater* test, although the appropriate test to use in cases such as this one, is not the end of the analysis. *Slater* does require consideration of whether an inconsistent position was "'calculated to make a mockery of the judicial system.'" *Slater*, 871 F3d at 1181 (III) (A) (citation omitted). But applying judicial estoppel every time failure to disclose is found to be intentional deception, without considering other factors or interests implicated by its application, may fail to do full equity depending on the facts and circumstances of the case. With an equitable doctrine such as judicial estoppel, bright-line rules can produce "at-least-inequitable results, if not manifestly unjust ones" and thus are inappropriate for a "tool of equity," the goal of which is "to secure justice." *Smith v. Haynes & Haynes P.C.*, 940 F3d 635, 644, 646 (III) (A) (1) (11th Cir. 2019).

(i) *In balancing the equities, a trial court should consider whether the application of judicial estoppel will result in a windfall to the civil defendant with no benefit to the plaintiff's creditors.*

As the Eleventh Circuit recognized, "[t]he results of judicial estoppel are drastic — a party is deprived of the right to pursue a case regardless of the claim's merits," while the opposing party "escapes potential accountability for wrongdoing without regard to the merits of the claim." *Smith*, 940 F3d at 646 (III) (A) (1). Therefore, "equitable principles dictate that courts proceed with care and consider *all* the relevant circumstances" to prevent civil defendants from "avoid[ing] liability on an otherwise potentially meritorious civil claim while providing no corresponding benefit to the court system" and to avoid harming innocent creditors in a bankruptcy action through dismissal of the debtor's civil claim. *Slater*, 871 F3d at 1187-1188 (III) (C) (emphasis supplied).

If a particular application of judicial estoppel would benefit only alleged bad actors, such an outcome weighs heavily against applying judicial estoppel. See *Martineau v. Wier*, 934 F3d 385, 396 (II) (B) (1) (4th Cir. 2019) ("We discern little in the way of equities

to recommend an outcome in which judicial estoppel operates to the benefit of only an alleged bad actor." (citation and punctuation omitted)). Failure to consider all relevant circumstances can have "perverse" results, where the only real winner is the defendant in the civil litigation who "received the windfall of escaping liability"; creditors and bankruptcy courts are the losers because creditors are "denied the benefit of the claim as a bankruptcy estate asset" and "bankruptcy courts [are] stripped of their discretion to determine the effect of the failure to disclose." *Smith*, 940 F3d at 644 (III) (A) (1).

A trial court must take care to avoid applying judicial estoppel to rob a bankruptcy court of its power to deal with the failure to disclose. Bankruptcy courts have "tools of [their] own" to punish debtors who purposefully attempt to hide assets. *Slater*, 871 F3d at 1187 (III) (C). The record before us does not indicate that the bankruptcy court took any action in response to Ward-Poag's initial failure to disclose, nor that it considered the $1 valuation of her civil claim to be sufficiently egregious to warrant a response. That a bankruptcy court elected not to address an inadequate disclosure

after its discovery is a factor to consider under *Slater*. See id. at 1185 (III) (C). If the superior court considered this factor here, it made no mention of it in its order.

(ii) *In cases involving alleged government misconduct, a trial court might also consider the public's interest as an important equity against applying judicial estoppel.*

In considering whether judicial estoppel benefits only a bad actor, a trial court might consider, as a countervailing force, the public's interest in exposing potential government misconduct. When determining whether to apply judicial estoppel, courts should weigh the egregiousness of a litigant's behavior (and the corresponding interest in the integrity of the judicial process) against other interests in government integrity when claims at issue relate to that interest. Although there is a very serious interest in protecting the integrity of court proceedings, the integrity of Georgia government and its officials is no less important than the integrity of federal bankruptcy court proceedings and the actions of private litigants in them. Cf. *Benton*, 280 Ga. at 471 ("[A] court should be hesitant to apply federal judicial estoppel to defeat the important

32

rights of a spouse to potential support and an equitable share of marital property."). The responsibility of private citizens to act with integrity in federal bankruptcy proceedings should not be prioritized over the responsibility of officials of Georgia's state and local government to act with integrity in doing the public's business. Where, as here, the underlying civil case involves allegations of government abuse, at the very least, a trial court ought to consider and weigh the countervailing state interest in the integrity and accountability of local government and the windfall for alleged government bad actors before applying judicial estoppel, including the potential disservice to taxpayers if the merits of the claim are never touched. To do otherwise is to value the integrity of judicial proceedings as infinitely more important than the integrity of the executive and legislative branches of state and local government.[9]

---

[9] The special concurrence itself acknowledges a powerful public interest in litigating meritorious or even colorable claims of government misconduct. Despite this recognition, the special concurrence says that no weight should be afforded to protect this interest because there is also a strong public interest in quickly disposing of meritless claims of government corruption. Of course, judicial estoppel does not involve weighing the merits. See *Smith*, 940 F3d at 646 (III) (A) (1). A trial court may consider whether continued litigation of a claim involving government integrity, such as the one here, would be in the

*Judgment affirmed. All the Justices concur, except Nahmias, P. J., and Blackwell and Warren, JJ., who join in full except for Division 2 (d) (ii), Melton, C.J., and McMillian, J., who dissent, and Ellington, J., disqualified.*

public interest and exercise its discretion in weighing that factor in comparison to the other equities at stake. Nothing in this opinion should be understood to suggest what weight the trial court should afford that factor. That decision is for the trial court, not this Court.

BLACKWELL, Justice, concurring specially.

I concur fully in the judgment, and with the exception of Division 2 (d) (ii), I join the opinion of the Court. I cannot join Division 2 (d) (ii), however, because I do not agree that "the public's interest in exposing potential government misconduct" should be afforded any weight in the balancing of the equities in this case with respect to judicial estoppel. Although there may be a powerful public interest in the litigation of meritorious or even colorable claims of government misconduct, there also is a strong public interest, I think, in the expeditious termination of meritless litigation against the government and its officers. Bare, unproved allegations of government misconduct hardly establish that the public has any interest at all in the continued litigation of this case.

MELTON, Chief Justice, dissenting.

Pursuant to the two-factor test set forth in *Slater v. United States Steel Corp.*, 871 F3d 1174, 1181 (III) (A) (11th Cir. 2017) (en banc), the trial court properly concluded that Ward-Poag acted with the intent to make a mockery of the judicial system through her inconsistent filings. The majority misses this point by focusing on immaterial facts and hypothetical scenarios that ultimately do nothing to undermine the correctness of the trial court's decision to grant summary judgment to the County on the issue of judicial estoppel. Accordingly, I respectfully dissent.

As an initial matter, the undisputed evidence showed that Ward-Poag maintained inconsistent positions under oath in separate proceedings by swearing in superior court that her civil cause of action was worth over $3 million while at the same time swearing without qualification in the bankruptcy court that this same cause of action was actually worth only $1. See *Dugger v. Smith & Nephew, Inc.*, 2013 U.S. Dist. LEXIS 191729, at *5 (II) (B) (N.D. Ga. 2013) (plaintiffs took inconsistent positions by

36

representing under oath in bankruptcy court that their pending civil case was worth $30,690 while claiming damages that were "certainly greater than $75,000" in their civil complaint) (punctuation omitted). Thus, the first *Slater* factor was met in this case. *Slater*, supra, 871 F3d at 1181 (III) (A) (The first of the two *Slater* factors is "whether . . . the party took an inconsistent position under oath in a separate proceeding.").

This leaves only the second *Slater* factor — whether Ward-Poag's inconsistent positions were calculated to make a mockery of the judicial system — as the salient consideration for purposes of summary judgment here. And, with respect to that second factor:

> [T]o determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case. When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff

37

> identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

Id. at 1185 (III) (C). The trial court examined the facts and circumstances relating to Ward-Poag's intent to make a mockery of the judicial system consistent with the parameters set forth in *Slater*, but the majority asserts that material issues of fact exist regarding Ward-Poag's intent because she was initially unaware of her need to amend her bankruptcy schedules to include her civil claim. However, the problem with the majority's analysis is that it focuses on the lack of intent to make a mockery of the bankruptcy court that Ward-Poag had *before* she became aware of her obligation to update her bankruptcy schedules. This has *nothing to do with* Ward-Poag's manifested intent to make a mockery of the court *after* she received the County's motion for summary judgment that fully informed her of the doctrine of judicial estoppel and its implications, and which fully informed her of her obligation to amend her bankruptcy schedules accordingly. As explained more fully below, the trial court properly examined the undisputed evidence under the

38

second *Slater* factor to conclude that Ward-Poag intended to make a mockery of the judicial system through her inconsistent filings *after* she became aware of her obligation to update her bankruptcy schedules.

The undisputed facts at the time of the October 17, 2017 summary judgment hearing were as follows. Ward-Poag — a law school graduate — was a sophisticated plaintiff.[10] Although Ward-Poag conceivably was initially unaware of her obligation to update her bankruptcy schedules to reveal her civil claim, she was placed on clear notice of her obligation to do so by the County's motion for

---

[10] There is no requirement under *Slater* that a sophisticated plaintiff understand bankruptcy law in order to show an intent to make a mockery of the judicial system through inconsistent filings. A sophisticated person need not be a lawyer or know the law in order to show a calculated lack of candor in his or her court disclosures. The plaintiff's level of sophistication is but one of the considerations that can help to reveal a party's individual ability to consciously manipulate the system (or know better than to attempt to do so). The majority's attempt to downplay Ward-Poag's own level of sophistication simply because she is not a bankruptcy attorney — especially when she was a law school graduate who had the good sense to hire private counsel in her bankruptcy case — is unpersuasive. This is particularly true given the well written motion for summary judgment by the County that thoroughly and clearly laid out the facts and the law on judicial estoppel and that put Ward-Poag on notice of her obligation to amend her schedules.

summary judgment. As stated in the County's statement of undisputed material facts in support of its motion:

> In her Chapter 13 Petition, Plaintiff Ward-Poag was required to identify under oath all liabilities and assets, including any contingent or unliquidated claims of any nature . . . . As part of her schedules of specific assets — specifically, the "Schedule B — Personal Property" section of her Chapter 13 Petition — Plaintiff Ward-Poag was required to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." See id. at 16. Plaintiff marked "None" and listed no claims against Fulton County. Id. She signed her Chapter 13 Petition on May 6, 2013, declaring that "under penalty of perjury that the information provided in this petition is true and correct." See id. at 3.
>
> . . .
>
> Plaintiff Ward-Poag's complaint against Fulton County, filed in October 2016, is based on actions allegedly commencing in September 2015. Plaintiff Ward-Poag claims that Fulton County's alleged conduct entitles her to $3 million ($1.5 million for the [whistleblower] count and $1.5 million for the defamation count). (Am. Compl. p. 18.) Despite her knowledge of claimed potential assets totaling $3 million, Plaintiff Ward-Poag has not sought to amend her ongoing Chapter 13 plan to include her claims against Fulton County.

After the County's motion placed Ward-Poag on notice of her duty to update her bankruptcy schedules, Ward-Poag responded by

40

acknowledging that she had filed for Chapter 13 bankruptcy, but then claimed under oath in her October 4, 2017 affidavit in opposition to the County's motion that she had only been made "aware of her obligation to [amend her bankruptcy petition] *by [her] counsel*," which then prompted her to "immediately amend[ ] her bankruptcy petition." Ward-Poag's claim that it was her counsel, and not the County's motion, that made her "aware" of her obligation to amend her bankruptcy schedule does not place in dispute the material fact that she knew of her obligation to amend her schedules through the County's filing of its summary judgment motion. And, in any event, it is also undisputed that Ward-Poag waited until a month after the County had already moved for summary judgment before she "immediately amended" her bankruptcy schedules to reveal her civil lawsuit (regardless of whenever she was made "aware" of that obligation "by [her] counsel").

Then, instead of amending her bankruptcy schedule to reflect anything resembling the value that she swore the case had in superior court, Ward-Poag instead represented under oath — with

an attorney acting on her behalf — that the asset was worth only $1. By doing so, she created the potential to gain an unfair advantage over her creditors in the bankruptcy proceedings. See, e.g., *Zahabiuon v. Automotive Finance Corp.*, 281 Ga. App. 55, 57 (1) (635 SE2d 342) (2006) (plaintiff's representation to bankruptcy trustee that he had no outstanding legal claims contradicted the legal position taken in his lawsuit, and the bankruptcy trustee accepted these representations as true for purposes of discharging him, which allowed the plaintiff to realize gains that were inaccessible to his creditors). Thus, even though Ward-Poag might not have initially known about her obligation to amend her bankruptcy schedules, once she *did* become aware of her obligation to disclose her cause of action as an asset, she nevertheless waited an additional month before amending her schedules and then *chose* — under penalty of perjury — to undervalue the asset in her bankruptcy proceedings by affirmatively swearing that the $3 million lawsuit was worth $1.

Based on the undisputed evidence regarding Ward-Poag's level of sophistication, the timing of her disclosures after she had been

42

placed on notice about her duty to amend, the lack of evidence showing that the bankruptcy trustee or Ward-Poag's creditors were aware of her civil lawsuit before she amended her disclosures,[11] and the manner in which she chose to amend her bankruptcy schedules to represent to the bankruptcy court and her creditors that her lawsuit was worth only $1, the trial court properly concluded — under the totality of the facts and circumstances before it as evaluated pursuant to *Slater* — that Ward-Poag "intended to deceive her creditors, and . . . made a mockery of both [the superior] Court and the Bankruptcy Court" by making an inaccurate and untimely disclosure to the bankruptcy court after being placed on notice by the County of the importance of revealing her civil cause of action as an asset. See, e.g., *D'Antignac v. Deere & Co.*, 342 Ga. App. 771, 774-776 (804 SE2d 688) (2017) (where plaintiff failed to disclose civil action that arose after her Chapter 13 bankruptcy had been confirmed but before she was discharged, judicial estoppel properly

[11] There is no evidence that the bankruptcy trustee or Ward-Poag's creditors were aware of her civil lawsuit before she amended her disclosures to reveal it a month after the County moved for summary judgment.

43

applied to bar plaintiff's civil claims). See also *Dugger*, supra, 2013 U.S. Dist. LEXIS 191729 at *5 (II) (B). The fact that the bankruptcy court did not take action against Ward-Poag after she amended her bankruptcy schedules does not preclude the trial court from concluding under the totality of the circumstances that Ward-Poag made an intentional effort to make a mockery of the judicial system through her inaccurate and untimely filing, as the bankruptcy court's decision about whether or not to take additional action is only one of the circumstances that a trial court can examine under the second *Slater* factor.

Only after the trial court announced at the October 17 hearing that it was granting the County's motion for summary judgment did Ward-Poag submit an untimely affidavit in which she blamed her attorney for her sworn, inconsistent representation to the bankruptcy court about the value of her civil lawsuit. Her bankruptcy attorney also submitted an untimely affidavit in which he claimed that it was a "normal and customary practice" to represent to a bankruptcy court that a pending civil lawsuit was

44

worth $1. However, the trial court did not indicate that it considered, nor was it required to consider, either of these late-filed affidavits when making its summary judgment ruling based on the facts that *were* properly before it. See *Bush v. Eichholz*, 352 Ga. App. 465, 477 (5) (833 SE2d 280) (2019) ("[A] trial court is not at all bound to consider evidence filed after a summary judgment hearing."); *Zampatti v. Tradebank Intl. Franchising Corp.*, 235 Ga. App. 333, 338 (2) (b) (508 SE2d 750) (1998) (trial court has discretion to decide whether or not it will consider late-filed affidavits for purposes of summary judgment). See also OCGA § 9-11-56 (c) (party opposing summary judgment may serve opposing affidavits "prior to the day of [the scheduled summary judgment] hearing"). And, based on the undisputed evidence as analyzed under the *Slater* factors, the trial court did not abuse its discretion in concluding that the County was entitled to summary judgment.

The majority's reliance on Ward-Poag's representation that she had no intention of "deceiving" the bankruptcy court before she learned of her obligation to amend is misplaced. First, *Slater* does

45

not evaluate a party's "calculated [effort] to make a mockery of the judicial system," id. at 1185 (III) (C), from some point in time prior to the moment that the party's calculated efforts arose. Second, under the majority's analysis, a party with a *present* intent to make a mockery of the judicial system would *always* be able to avoid summary judgment on judicial estoppel by simply claiming that she had no intention of deceiving the court *before* she knew that she had to amend her bankruptcy schedules. Indeed, rarely would someone "admit" to having a present intent to make a mockery of the court, even if that party had one. But allowing a party to use their past lack of intent to manipulate the court as a means of negating undisputed evidence of their present intent to do so would undermine the entire "purpose of judicial estoppel[, which] is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Period Homes v. Wallick*, 275 Ga. 486, 488 (2) (569 SE2d 502) (2002). That is why the trial court is tasked with evaluating intent based on the totality of the circumstances as

46

outlined in *Slater*, and that is exactly what the trial court did here. The majority would undermine the trial court's proper findings pursuant to *Slater* by focusing on immaterial facts that do not speak to a potential bad actor's true intent.

I also do not believe that we can assume, as the majority does, that the trial court did not consider the equities associated with the type of lawsuit that was pending before it at the time that it made its decision on judicial estoppel. The trial court expressly applied *Slater* and focused on "all the facts and circumstances of the . . . case." *Slater*, supra, 871 F3d at 1185 (III) (C). And it is clear that the trial court was well aware of the allegations in Ward-Poag's verified complaint, as the trial court's order specifically references some of the substantive allegations of workplace retaliation by a county commissioner against Ward-Poag. It is also the case, however, that Ward-Poag's claims are still unproven, and, again, the salient issue in this case is whether Ward-Poag exhibited the requisite intent to make a mockery of the judicial system through her inconsistent filings. The trial court evaluated that intent based on the facts

before it consistent with the parameters set forth in *Slater*, and the majority's reference to other facts that it would have liked for the trial court to have discussed with specificity does not make the trial court's evaluation incorrect.

In any event, the public's interest in hearing the merits of Ward-Poag's *allegations* has little to do with *Ward-Poag's* conduct in taking inconsistent positions in separate court proceedings that would make a mockery of the judicial system. While equitable considerations are always relevant to a trial court's exercise of its discretion in applying judicial estoppel, see, e.g., *Benton v. Benton*, 280 Ga. 468, 471 (629 SE2d 204) (2006) (trial court did not abuse its discretion in refusing to apply judicial estoppel where doctrine would have "defeat[ed] the important rights of a spouse to potential support and an equitable share of marital property"), Ward-Poag does not somehow become less likely to have intended to make a mockery of the judicial system — nor does she gain greater leeway with respect to her duty to maintain consistent positions to avoid the consequences of judicial estoppel — based upon whom she has

decided to sue in a civil action and the public's interest in hearing the merits of that action. The trial court properly considered intent under the undisputed facts and circumstances of this case for purposes of summary judgment and did not abuse its discretion in applying judicial estoppel as an equitable remedy based on the standard set forth in *Slater*.

For all of the foregoing reasons, I respectfully dissent.

I am authorized to state that Justice McMillian joins in this dissent.

Decided October 5, 2020 —Reconsideration denied November 2, 2020.

Certiorari to the Court of Appeals of Georgia — 351 Ga. App. 325.

*Lawrence & Bundy, Allegra J. Lawrence, Leslie J. Bryan, Maia J. Cogen, Lisa M. Haldar; Kaye W. Burwell*, for appellant.

*Rebecca W. McLaws*, for appellee.

*Ellis Painter Ratterree & Adams, Philip M. Thompson; Chambless, Higdon, Richardson, Katz & Griggs, David N. Nelson; Drew, Eckl & Farnham, Elissa B. Haynes; Balch & Bingham, Malissa A. Kaufold-Wiggins*, amici curiae.