**FIRST DIVISION
BARNES, P. J.,
GOBEIL and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 1, 2021**

# In the Court of Appeals of Georgia

A21A0321. REYNAUD v. FIVE OAKS DEVELOPMENT, INC.

GOBEIL, Judge.

Louis F. Reynaud, IV, appeals from the superior court's grant of Five Oaks Development, Inc.'s ("Five Oaks") motion for summary judgment against Reynaud's counterclaims in this underlying dispossessory action. On appeal, in several interrelated enumerations of error, Reynaud contends that the superior court erred in applying the doctrine of judicial estoppel to bar his instant claims based on alleged inconsistent representations he made in a prior bankruptcy proceeding. Reynaud also asserts that the superior court erred in granting summary judgment to Five Oaks against his counterclaims as material issues of fact remain as to whether the parties entered into an enforceable contract to form a joint venture. For the reasons that

follow, we vacate and remand for the superior court to employ the proper two-part test to determine whether the doctrine of judicial estoppel applies to the instant case.

> A trial court properly grants a motion for summary judgment when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. On appeal of a grant of summary judgment, we conduct a de novo review, and we view the evidence in the light most favorable to the nonmoving party.

*Holcomb Investments Ltd. v Keith Hardware, Inc.*, 354 Ga. App. 270, 271 (840 SE2d 646) (2020) (citation and punctuation omitted).

So viewed, the record shows that the instant action originated as a dispossessory action in the Magistrate Court of Forsyth County. As relevant here, Five Oaks sought a writ of possession to remove a construction trailer maintained by Reynaud from land owned by Five Oaks located at the Manor Golf Course & Country Club (the "Property").[1] Reynaud filed an answer, in which he raised counterclaims for breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, unjust enrichment, fraud, declaratory judgment, and injunctive relief. In support of his claims, Reynaud stated that in 2011, he entered into a partnership/joint

---

[1] The trailer is located on Lot 76 of the Property, adjacent to a home on Lot 75, where Reynaud and his wife reside.

2

venture agreement with the King Family[2] to develop lots on the Property in order to construct homes. He asserted that his efforts in the joint venture led to an increase in the value of the Property of several million dollars. According to Reynaud, the King Family later denied the existence of an agreement between the parties, and intended to sell the remaining lots on the Property to a third party, thereby depriving Reynaud of his interest in the venture. Reynaud sought damages based on his expected profits per the terms of the parties' oral agreement. Reynaud filed a motion to transfer the action to Forsyth County Superior Court, asserting that his counterclaims sought damages in excess of the jurisdictional limit of magistrate court. The action was then transferred to superior court.

Following a hearing, a transcript of which does not appear in the record, the superior court granted a ten-day writ of possession to Five Oaks. The court found, based on an appraiser's testimony, that Reynaud was liable to pay rent of $525 per month to Five Oaks for the trailer during the pendency of the dispossessory action.

---

[2] The term "King Family" refers to Reynaud's sister, Suzanne R. King, her husband, Thad D. King, and Thad's siblings, Christy King Davidson, J. Dudley King, Jr., Marsh B. King, and Robert C. King; and entities owned by them including King Family Investments, L.P., KF Investments 1, LLC, and Five Oaks. Thad is the Chief Executive Officer of Five Oaks.

3

The court, however, reserved the issue of Reynaud's payment of rent into the court registry pending the trial on his counterclaims and any other outstanding issues.

Five Oaks filed a motion for summary judgment on Reynaud's counterclaims. As relevant here, Five Oaks highlighted that on May 9, 2014, Reynaud and his wife had filed a Chapter 7 petition for bankruptcy[3] under oath in the United States Bankruptcy Court for the Northern District of Georgia. On Schedule A of the petition, which required Reynaud to list any real property assets in which he "has any legal, equitable, or future interest," Reynaud represented "None." Similarly, under "Schedule B - Personal Property" of the petition, Reynaud checked "None" for Item 14, which concerned "Interests in partnerships or joint ventures." Five Oaks contended that Reynaud had admitted under oath in the prior bankruptcy proceeding that he owned no property and held no interest in any partnerships or joint ventures, which was in direct conflict with his position in the instant dispossessory action,

---

[3] "Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets." *Harris v. Viegelahn*, 575 U. S. 510, 513 (I) (A) (135 SCt 1829, 191 LE2d 783) (2015). When a debtor files a Chapter 7 petition, his assets, subject to certain exemptions, are immediately transferred to a bankruptcy estate. 11 USC § 541 (a) (1). Although a Chapter 7 debtor "must forfeit virtually all his prepetition property," the bankruptcy laws give the debtor an immediate "fresh start" from his financial past "by shielding from creditors his postpetition earnings and acquisitions." *Harris*, 575 U. S. at 514 (I) (A).

4

wherein his counterclaims were predicated on the existence of a joint venture/partnership with Five Oaks. In response, Reynaud explained:

> he did not intend by making such representations in the context of his bankruptcy proceeding to preclude his opportunity to recover on an oral agreement with Five Oaks, nor did he intend to unfairly represent anything to the bankruptcy court, his having sought advice of counsel with respect to the bankruptcy filing.

Following a hearing, a transcript of which does not appear in the record, the superior court denied Five Oaks's motion for summary judgment, concluding that material issues of fact remained as to whether: (1) part performance by Reynaud removed the parties' oral agreement from the statute of frauds; and (2) the parties entered into an enforceable joint venture.

Prior to receiving the superior court's order, Five Oaks submitted a supplemental brief in support of its motion for summary judgment, urging the court to apply the doctrine of judicial estoppel. Specifically, Five Oaks highlighted that based on Reynaud's sworn statements in his bankruptcy petition that he owned no real property or interests in partnerships or joint ventures, the bankruptcy court had granted him relief based on those representations. By contrast, in the present action, the crux of Reynaud's counterclaim centered on the breach of a joint venture with

Five Oaks that Reynaud previously swore did not exist. Five Oaks also filed a motion for reconsideration from the superior court's denial of its motion for summary judgment, reiterating its judicial estoppel argument.

The superior court entered a final order on July 8, 2020, granting Five Oaks's motion for reconsideration and its motion for summary judgment against Reynaud's counterclaims. The court first acknowledged that it had failed to address the judicial estoppel issue in its previous order denying Five Oaks's motion for summary judgment. The court continued:

> In considering whether judicial estoppel applies, the [c]ourt finds that the positions asserted [by Reynaud] in the bankruptcy court and in this action are clearly inconsistent. In the bankruptcy proceeding[,] Mr. Reynaud asserted that he owned no real property and that he held no interests in partnerships or joint ventures. In the present action, the entire crux of [Reynaud's] counterclaim is that he entered into a joint venture to develop property and that he is entitled to recovery for the breach of the parties' joint venture agreement.

Additionally, the court found that the discharge granted by the bankruptcy court showed that Reynaud persuaded the bankruptcy court to accept his earlier representation that he did not have any interests in property or joint ventures. As a result, if the court accepted Reynaud's inconsistent position in the instant action that

he entered into a joint venture with Five Oaks, this would create "the perception that either the first or the second court was misled." Finally, the court reasoned that the failure to apply the doctrine of judicial estoppel would give Reynaud an unfair advantage based on his inconsistent positions in the two proceedings. The instant appeal followed.

1. In several interrelated enumerations of error, Reynaud contends that the superior court abused its discretion in applying the doctrine of judicial estoppel.

> The essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings.

*Kamara v. Henson*, 340 Ga. App. 111, 112 (1) (796 SE2d 496) (2017), disapproved on other grounds by *Fulton County v. Ward-Poag*, 310 Ga. 289, 297 (2) (c) (849 SE2d 465) (2020) (citation and punctuation omitted). "Judicial estoppel is an equitable doctrine that can be invoked by a court at its discretion, and we review a

7

trial court's application of that doctrine for an abuse of discretion." *Ward-Poag*, 310 Ga. at 291 (2) (a). "If a trial court significantly misapplies the law or clearly errs in a material factual finding, we may affirm the trial court's exercise of discretion only when we can conclude that, had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment." Id. at 292 (2) (a).

The United States Supreme Court has identified a general test to guide the application of judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-751 (II) (121 SCt 1808, 149 LE2d 968) (2001) (citations and punctuation omitted).

> In establishing those three factors, the United States Supreme Court did not intend to establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel because the

8

circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle. Instead, the Court emphasized that additional considerations may inform the doctrine's application in specific factual contexts, remembering that the purpose of judicial estoppel is to protect the integrity of the judicial process.

*Ward-Poag*, 310 Ga. at 294 (2) (b) (citation and punctuation omitted).

The Eleventh Circuit has declined to adopt the *New Hampshire* factors where, as here, there is no mutuality of parties. See *Slater v. U. S. Steel Corp.*, 871 F3d 1174, 1182 (III) (A) (11th Cir. 2017) (en banc). Instead, it employs a test for judicial estoppel that has two factors, namely: "whether (1) the party took an inconsistent position under oath in a separate proceeding, and (2) these inconsistent positions were calculated to make a mockery of the judicial system." Id. at 1181 (III) (A) (citation and punctuation omitted). Our Supreme Court recently reiterated that, in cases such as this one, where the party seeking to apply judicial estoppel was not a party to the prior proceeding in which the adverse party has allegedly has taken an inconsistent

9

position, courts should apply the two-part *Slater* test outlined by the Eleventh Circuit. *Ward-Poag*, 310 Ga. at 295 (2) (b).[4]

There is no dispute that Five Oaks was not a party to the prior bankruptcy proceeding. As a result, the superior court should have employed the two-factor *Slater* test. The court, however, made no mention of the *Slater* test in its order granting Five Oaks's motion for reconsideration. Rather, the court applied the three-factor *New Hampshire* test to the facts of the instant case. As an initial matter, we note that under both the *New Hampshire* and *Slater* tests, the first factor requires the trial court to determine whether the party took an inconsistent position in an earlier proceeding. See *New Hampshire*, 532 U. S. at 750 (II); *Slater*, 871 F3d at 1181 (III) (A).

Here, the superior court concluded that Reynaud asserted inconsistent positions in the bankruptcy court and the superior court as to his interest in the Property based

---

[4] The facts in *Ward-Poag* involved the application of the doctrine of judicial estoppel when an adverse party fails to disclose a civil asset in a Chapter 13 bankruptcy filing. 310 Ga. at 294-295 (2) (b). See *Period Homes, Ltd. v. Wallick*, 275 Ga. 486, 487-488 (1) (569 SE2d 502) (2002) ("Unlike a bankruptcy proceeding under Chapter 13, there are only limited circumstances in which a Chapter 7 or 11 debtor must amend his schedule of assets to reflect property acquired after commencement of the case."). Nevertheless, the Eleventh Circuit formulated the two-part judicial estoppel test in an appeal where the prior proceeding involved a Chapter 7 bankruptcy petition, as is the case here. See *Slater*, 871 F3d at 1177 (I), 1180-1181 (III) (A).

10

on the partnership/joint venture agreement with Five Oaks. Reynaud's bankruptcy petition required the disclosure of all legal, equitable, or future interests in all property, as well as interests in partnerships or joint ventures. Reynaud failed to disclose any agreement or interest he had with regard to the Property in his 2014 bankruptcy petition, even though, by his own admission, the agreement that Reynaud is now seeking to enforce had its origins in 2011 or 2012. Similarly, although Reynaud asserted that his efforts in developing the lots resulted in a substantial increase in the value of the Property, Reynaud failed to disclose his accrued equity and ownership interest in the Property during his bankruptcy proceeding. Based on the foregoing, we conclude that the superior court properly found that there were no genuine issues of material fact as to whether Reynaud made inconsistent statements. Accordingly, Reynaud's actions satisfy the first factor under the two-part *Slater* test of asserting an inconsistent legal position in separate legal proceedings with regard to the same issue, namely, his ownership interest in the Property.

> With respect to the second part of the test: [t]o determine whether a plaintiff's inconsistent statements were calculated to make a mockery of the judicial system, a court should look to all the facts and circumstances of the particular case. When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of

11

sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Ward-Poag*, 310 Ga. at 295 (2) (b) (citation and punctuation omitted).

In this case, the superior court failed to consider the second factor in considering whether to grant Five Oaks's motion for summary judgment on judicial estoppel grounds. We therefore remand to the superior court to consider in the first instance whether Reynaud intended to deceive his creditors and make a mockery of the judicial system by any inconsistent positions he may have taken.[5] See *9766, LLC v. Dwarf House, Inc.*, 331 Ga. App. 287, 291 (4) (b) (771 SE2d 1) (2015) ("This

_____

[5] Five Oaks points out that the superior court stated in its reconsideration order "that it is important to prevent improper use of the judiciary which would occur if [Reynaud's] inconsistent positions were permitted." Based on this language, Five Oaks urges us to conclude that the court found that Reynaud intended "to manipulate or deceive the court system," which satisfies the second prong of the *Slater* test, namely, that Reynaud's inconsistent representations make a "mockery of the judicial system." *Ward-Poag*, 310 Ga. at 295 (2) (b) (citation and punctuation omitted). However, we decline to hold that this statement alone demonstrates that the trial court considered the second factor of the *Slater* test.

12

[C]ourt is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

2. Reynaud also asserts that the superior court erred in granting Five Oaks's motion for summary judgment against his counterclaims because genuine issues of material fact remain as to whether the parties entered into an enforceable agreement to develop the Property. We need not reach this issue because resolution of this claim of error hinges on whether the doctrine of judicial estoppel applies to bar Reynaud's representations in the instant case that he is entitled to a share of the profits from the development of the Property based on the existence of an agreement between the parties.

*Judgment vacated and case remanded with direction. Barnes, P. J., and Colvin, J., concur.*